783 N.W.2d 612 (2010)
280 Neb. 43
STATE of Nebraska, appellee,
v.
Jon D. WOLLAM, appellant.
No. S-09-768.
Supreme Court of Nebraska.
June 18, 2010.
*616 Kirk E. Naylor, Jr., Lincoln, for appellant.
Jon Bruning, Attorney General, and Kimberly A. Klein, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

NATURE OF CASE
Jon D. Wollam was charged with driving under the influence of alcohol (second offense), refusal to submit to a preliminary breath test, refusal to submit to a chemical test, child abuse, and having an open container of alcohol in a vehicle. He moved to suppress the evidence from the traffic stop, alleging that the stop was not supported by a reasonable suspicion. The Saline County Court overruled the motion. Wollam was subsequently convicted of refusal to submit to a preliminary breath test and refusal to submit to a chemical test. He appealed to the Saline County District Court, which affirmed his convictions and sentences.

SCOPE OF REVIEW
Both the district court and the Nebraska Supreme Court generally review appeals from the county court for error appearing on the record. State v. Royer, 276 Neb. 173, 753 N.W.2d 333 (2008). In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeal, and as such, its review is limited to an examination of the county court record for error or abuse of discretion. Id.
In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, *617 we apply a two-part standard of review. Regarding historical facts, we review the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. State v. Nuss, 279 Neb. 648, 781 N.W.2d 60 (2010).

FACTS
On March 7, 2008, the Lancaster County emergency dispatch center telephoned the emergency dispatch center in Crete, Nebraska, to relay information received about a drunk driver. The call was answered by Dawn Edmonds, an officer with the Crete Police Department. The Lancaster County dispatcher stated that she had received a report from a woman that her husband was driving drunk. The dispatcher said the driver had left Hallam, Nebraska, 30 minutes earlier and was on his way to Crete High School to pick up his children. The dispatcher described the vehicle as a white "dually" pickup with signs on the sides that said "JW Electric." It was believed that the driver would travel on Highway 33.
As a result of the call, Edmonds and Officer Brian Stork drove toward Crete High School, and on their way, they observed a vehicle matching the description received earlier. Stork made a U-turn to follow the truck and activated the patrol car's overhead emergency lights to stop the truck.
Stork approached the driver and asked him to get out of the vehicle and move to the rear of the truck. The driver was identified as Wollam, and his two sons were in the vehicle. Both Stork and Edmonds reported noticing an odor of alcohol emitting from Wollam's person. Stork administered the horizontal gaze nystagmus field sobriety test. Based on the report from the Lancaster County dispatch center, observation of the odor of alcohol, and indicators of impairment on the field sobriety test, Stork believed Wollam was under the influence of alcohol. Wollam refused to submit to a preliminary breath test. He was read the postarrest chemical test advisement and asked to provide a blood sample. He refused and was arrested.
Wollam was charged with driving under the influence of alcohol (second offense), refusal to submit to a preliminary breath test, refusal to submit to a chemical test, child abuse, and possessing an open alcoholic beverage container. He moved to suppress any evidence gathered as a result of the stop, arguing that the stop was not supported by a reasonable suspicion, based upon articulable facts, that the motor vehicle was being operated in violation of the law. Wollam claimed the stop violated his rights under the 4th and 14th Amendments to the U.S. Constitution and article I, § 7, of the Nebraska Constitution.
During the suppression hearing, the State offered exhibit 1, which is a recording of the call from the Lancaster County dispatch center to the Crete dispatch center. Wollam had no objection, and the trial court received the exhibit. After testimony from Edmonds and Stork, Wollam offered exhibit 2 into evidence, which is a recording of the call from Wollam's wife to the Lancaster County dispatch center. The parties stipulated to the authenticity of the recording. The State objected to the relevance of the recording, and the court received the exhibit "subject to relevancy."
The trial court overruled the motion to suppress. It found that the officers, relying on a report relayed to them by the Lancaster County dispatch center, located Wollam's vehicle near the location mentioned in the report. The description of the vehicle was consistent with the report. *618 The court found that the officers received what they believed to be a valid report upon which they should act and did so. The court concluded the officers had a sufficient articulable reason to effectuate a stop.
At trial, the State offered exhibits 1 and 2, along with exhibit 3, which was Stork's police report of the incident. Wollam stipulated that the police report accurately reflected what Stork's testimony would be at trial. Wollam stated that the stipulation was subject to his objection that the traffic stop was illegal. The trial court received exhibits 1, 2, and 3 without objection. The court noted that Wollam had preserved his objection to the traffic stop.
Wollam was found guilty of refusal to submit to a preliminary breath test and refusal to submit to a chemical test. He was ordered to pay fines totaling $500 and was placed on probation for 12 months.
Wollam appealed his convictions and sentences to the district court. He alleged the county court erred in overruling his motion to suppress. The district court remanded the cause to the county court to determine whether the county court had taken exhibit 2 into consideration in its ruling on Wollam's motion to suppress. Exhibit 2 had been received at the suppression hearing subject to the State's objection based on relevancy. The record did not indicate whether the county court ruled on the relevancy objection. However, exhibit 2 was admitted at trial without objection. In response to the district court's request, the county court stated that exhibit 2 was irrelevant for purposes of the motion to suppress and that, therefore, the county court had not considered it in ruling on the motion to suppress.
The district court found that the initial telephone call about the drunk driver was not anonymous, because it came from Wollam's wife and she was accountable for her report. She described the vehicle in detail and reported where the vehicle could be found. The description of the vehicle was verified by law enforcement.
The district court concluded that the most important indicia of reliability was the motivation the informant had to tell the truth to protect her children from harm should they get in the vehicle with a potentially drunk driver. The court found, based on the totality of the circumstances, that there was sufficient reasonable suspicion to conduct an investigatory stop of Wollam's vehicle. The district court affirmed the judgment and sentences of the county court. Wollam appeals.

ASSIGNMENT OF ERROR
Wollam asserts, summarized and restated, that the district court erred in affirming the county court's order overruling his motion to suppress.

ANALYSIS
The issue framed by the district court was whether the telephone call from Wollam's wife to the Lancaster County dispatch center was sufficient to allow the officers to effectuate a stop within the requirements of the Fourth Amendment. The Fourth Amendment guarantees the right to be free of unreasonable search and seizure. State v. Royer, 276 Neb. 173, 753 N.W.2d 333 (2008). This guarantee requires that an arrest be based upon probable cause and limits investigatory stops to those made upon an articulable suspicion of criminal activity. Id., citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Wollam argues that the evidence obtained from the stop of his vehicle should have been suppressed because the officers did not have a reasonable, articulable suspicion of criminal activity. In reviewing a *619 trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. Regarding historical facts, we review the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. State v. Nuss, 279 Neb. 648, 781 N.W.2d 60 (2010).
The record before us contains recordings of the call to the Lancaster County dispatch center (exhibit 2) and the call to the Crete dispatch center (exhibit 1). These exhibits were offered and received at trial without objection. Both are relevant to our determination whether the police had a reasonable suspicion to stop Wollam's vehicle. We therefore summarize the important parts of each call.
In exhibit 2, the caller to the Lancaster County dispatch center identified herself by name and as Wollam's wife. She stated that her husband had "just left here" and was "incredibly drunk." She added, "We're in the middle of a divorce." She stated that her husband was driving a white GMC dually pickup truck and that he was going to pick up their children at the Crete High School. She did not know the license plate number but knew that the truck had "JW Electric" on its sides. She described the route Wollam would take, and she provided her telephone number. In exhibit 1, the Lancaster County dispatch center then called the Crete dispatch center to advise of the report from a woman who stated that her husband was driving drunk. The dispatcher relayed the description of the truck and the route it would be traveling.
The Crete police officers did not observe any illegal activity on Wollam's part. They were acting solely on the report from the Lancaster County dispatch center that a white dually pickup was being driven to Crete High School by a driver who was intoxicated.
The issue is whether the calls described in exhibits 1 and 2 provided sufficient foundation to give the officers reasonable suspicion to stop the vehicle. Wollam argues that an anonymous report of a drunk driver, including a description of the vehicle, is not sufficient to justify a stop of the vehicle unless the investigating officer observes independent evidence to suggest that the driver is impaired.
An investigative stop is "`limited to brief, non-intrusive detention during a frisk for weapons or preliminary questioning.'" State v. Van Ackeren, 242 Neb. 479, 486, 495 N.W.2d 630, 636 (1993), quoting United States v. Armstrong, 722 F.2d 681 (11th Cir.1984). While this type of encounter is considered a "seizure" and invokes Fourth Amendment safeguards, "`because of its less intrusive character [it] requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime.'" Van Ackeren, 242 Neb. at 486, 495 N.W.2d at 636.
"`"[A]n investigatory stop must be justified by objective manifestation that the person stopped is, has been, or is about to be engaged in criminal activity. In determining what cause is sufficient to authorize police to stop a person, the totality of the circumstances  the whole picture  must be taken into account...."'"
Id. at 497, 495 N.W.2d at 642. "`"`The assessment of the totality of circumstances includes all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is or has been or is *620 about to be engaged in criminal behavior....'"'" Id. (emphasis omitted). An officer is not required to wait until a crime has occurred before making an investigative stop. Id.
We have held that the factual basis for a stop "need not arise from the officer's personal observation, but may be supplied by information acquired from another person. When the factual basis is supplied by another, the information must contain sufficient indicia of reliability. A citizen informant who has personally observed the commission of a crime is presumptively reliable." State v. Bowley, 232 Neb. 771, 773, 442 N.W.2d 215, 217 (1989).
In the case at bar, the information came from a reliable citizen informant. The call came from the wife of the person driving the vehicle. The caller gave her name, identified herself as Wollam's wife, and provided her telephone number. She reported that her husband was "incredibly drunk," and she described his truck and the route he would take to get to Crete High School.
A "citizen informant" is "a citizen who purports to have been the witness to a crime who is motivated by good citizenship and acts openly in aid of law enforcement." State v. Lammers, 267 Neb. 679, 686, 676 N.W.2d 716, 724 (2004).
Unlike the police tipster who acts for money, leniency, or some other selfish purpose, the citizen informant's only motive is to help law officers in the suppression of crime. ... Unlike the informant who acts out of self-interest, the citizen informant is without motive to exaggerate, falsify, or distort the facts to serve his or her own ends.
Id. at 687, 676 N.W.2d at 724.
In Bowley, supra, a police officer was flagged down by two people on a motorcycle who reported that a pickup behind them had attempted to force them off the road. The motorcycle riders identified the pickup as it drove past while they were talking to the officer. The driver of the pickup was arrested for operating a motor vehicle while intoxicated. He sought to suppress the evidence obtained as a result of the stop.
We held in Bowley, supra, that while the informants were unidentified until after the driver was stopped, the information from the motorcycle riders was presumptively reliable. We stated that the court balances several factors in determining whether an investigatory stop is reasonable. These factors include the reliability and credibility of the informant, the description of the vehicle, the officer's observation of traffic violations, and the timelag between the report of criminal activity and the stop.
This court had previously considered similar factors in State v. Ege, 227 Neb. 824, 420 N.W.2d 305 (1988). An employee of a service station approached a police officer parked next to the station. The employee pointed to a vehicle in a nearby parking lot and told the officer that the driver had driven over the curb near the front door of the station. The employee reported that the driver had come into the station to purchase chewing gum and that he smelled strongly of alcohol. The police officer observed the vehicle start and stop three or four times in the parking lot and followed it for a short distance, but did not observe any moving violations. On stopping the vehicle, the officer noted slurred speech and a strong odor of alcohol on the driver's breath. On appeal, the driver claimed the initial stop was illegal.
We stated:
"The reliability of the informant varies from an anonymous telephone tipster to a known citizen's face-to-face meeting with police officers. The vehicle description *621 varies from minimal to very detailed. The reported location of the vehicle varies from pinpoint accuracy to a general direction of travel. The observation of traffic violations ranges from none to several. The shorter the time lag, the more likely the stop is valid."
Id. at 827, 420 N.W.2d at 308 (emphasis supplied), quoting State v. Warren, 404 N.W.2d 895 (Minn.App.1987).
In Ege, supra, there was a face-to-face conversation between the informant and the officer and the informant identified himself by name. The informant's knowledge was based on his observation of the defendant's driving and an in-person encounter with the defendant. We stated that the informant was "of the most reliable type." Id. at 827, 420 N.W.2d at 308.
We stated in State v. Bridge, 234 Neb. 781, 452 N.W.2d 542 (1990), that an investigatory stop may be justified even if the law enforcement officer does not observe any erratic driving or other traffic violations. In that case, the defendant went to the police station to look for his dog. An officer directed the defendant to pick up the dog from the pound. The officer informed another officer that the defendant might be driving while under the influence and provided a description of the defendant, his vehicle, and the license plate number. The second officer drove to the pound, saw the defendant drive into the parking lot, and questioned him when he came out of the pound. The officer could smell alcohol on the defendant's breath and administered field sobriety tests. As a result of the tests, the officer determined that the defendant was under the influence of alcohol and arrested him. The defendant challenged the stop and sought to suppress the results of his urine test.
On appeal, we found that the evidence established the arresting officer had a reasonable basis supported by sufficient facts to justify his investigatory stop even though neither officer observed any erratic driving or other traffic violations.
Because the purpose of an investigative stop "is to clarify ambiguous situations, `even if it was equally probable that the vehicle or its occupants were innocent of any wrongdoing, police must be permitted to act before their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent.'"
Id. at 784, 452 N.W.2d at 545, quoting 1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 3.8 (West 1984). "The State's interest in preserving evidence and prevention of crime in a case such as this outweighs the defendant's [F]ourth [A]mendment interests." Bridge, 234 Neb. at 784, 452 N.W.2d at 545, citing Wibben v. N.D. State Highway Com'r, 413 N.W.2d 329 (N.D.1987).
Information from a reliable citizen informant "may be accepted as true in order to justify a brief detention to determine whether or not a crime has been committed, is being committed, or is about to be committed." Bridge, 234 Neb. at 785, 452 N.W.2d at 546, citing People v. Willard, 183 Cal.App.3d Supp. 5, 228 Cal. Rptr. 895 (1986). In Willard, the California court stated:
"The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegalto `enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.'"
183 Cal.App.3d Supp. at 10, 228 Cal.Rptr. at 898, quoting In re Tony C., 21 Cal.3d 888, 148 Cal.Rptr. 366, 582 P.2d 957 (1978).
*622 Wollam claims that his wife had an ulterior motive in calling law enforcement because they were in the process of getting a divorce. This information was given to the Lancaster County dispatch center but was not conveyed to the Crete police officers. The officers knew only that the report of a drunk driver came from a wife about her husband and that he was on his way to pick up their children.
Wollam argues that the recording of the call from his wife to the Lancaster County dispatch center was improperly received into evidence and that only the call from Lancaster County to Crete should have been considered. We disagree. Both calls may be considered. Although Wollam offered the recording of the call to Lancaster County into evidence at the hearing on the motion to suppress, and the State objected, it makes no difference in the result. Both calls are relevant to our analysis. At trial, the State offered both recordings into evidence. Wollam did not object but stated that the recordings were subject to his claim that "this evidence" was illegally seized as a result of an improper traffic stop. The trial court then received exhibits 1, 2, and 3.
In the case at bar, neither party objected to the recording from Wollam's wife to Lancaster County when it was offered at trial. The parties cannot now object to use of the recordings to determine whether there was reasonable suspicion for the traffic stop.
Wollam seems to argue that the information received by the Lancaster County dispatch center should not have been relied on by the Crete Police Department. We have held that "`[a] reasonably founded suspicion to stop a vehicle cannot be based solely on the receipt by the stopping officer of a radio dispatch to stop the described vehicle without any proof of the factual foundation for the relayed message.'" State v. Soukharith, 253 Neb. 310, 321, 570 N.W.2d 344, 354 (1997), quoting State v. Benson, 198 Neb. 14, 251 N.W.2d 659 (1977).
However, "if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information."
Soukharith, 253 Neb. at 321-22, 570 N.W.2d at 354, quoting United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).
"Thus, it is irrelevant whether an officer making a stop in reliance on a radio bulletin is aware of the factual foundation for the bulletin, so long as the factual foundation is sufficient to support a reasonable suspicion." Soukharith, 253 Neb. at 322, 570 N.W.2d at 354. We stated that if officers placing information into a national computer system had articulable facts sufficient to support a reasonable suspicion, an officer making a stop can rely upon the computer report as the basis for the stop. We held that "[a]n investigative stop, like probable cause, is to be `evaluated by the collective information of the police engaged in a common investigation.'" Id., quoting State v. Van Ackeren, 242 Neb. 479, 495 N.W.2d 630 (1993). See, also, Nauenburg v. Lewis, 265 Neb. 89, 655 N.W.2d 19 (2003).
In Hensley, 469 U.S. at 232, 105 S.Ct. 675, the Court stated, "The law enforcement interests promoted by allowing one department to make investigatory stops based upon another department's bulletins or flyers are considerable, while the intrusion on personal security is minimal."
*623 If a 911 emergency dispatch call has sufficient indicia of reliability, it can supply the necessary objective basis for suspecting criminal conduct. U.S. v. Cutchin, 956 F.2d 1216 (D.C.Cir.1992). In such a case, a dispatcher may alert other officers by radio, and those officers may rely on the report, even though they cannot vouch for it. Id. See, also, U.S. v. Kaplansky, 42 F.3d 320 (6th Cir.1994) (officers could rely on dispatcher's conclusion about suspicious activity without inquiring into basis of dispatcher's knowledge).
A third-party report of suspected criminal activity must possess sufficient indicia of reliability to form the basis of an officer's reasonable suspicion. U.S. v. Fernandez-Castillo, 324 F.3d 1114 (9th Cir.2003). A dispatcher's knowledge may be properly considered as part of the analysis of reasonable suspicion. Id. In Fernandez-Castillo, a highway patrol dispatcher who received a report of erratic driving from two transportation department employees radioed the report to a law enforcement officer. The officer stopped the vehicle even though he did not personally observe any traffic violation. The U.S. Court of Appeals for the Ninth Circuit found that the initial report possessed indicia of reliability to be taken into consideration to determine whether the officer had reasonable suspicion to stop the vehicle: The report described the suspect car in detail, the officer met the car in exactly the place it would be expected to travel based on the description given in the report, and the officer could have reasonably concluded that the report was based on observations made contemporaneously to the dispatch.
The collective knowledge of a police officer has also been applied to the determination of probable cause. "The existence of probable cause justifying a warrantless arrest, however, is tested by the collective information possessed by all the officers engaged in a common investigation." State v. Wegener, 239 Neb. 946, 949, 479 N.W.2d 783, 786 (1992). "Under this `collective knowledge' doctrine, an officer who does not have personal knowledge of any of the facts establishing probable cause for the arrest may nevertheless make the arrest if the arresting officer is merely carrying out directions of another officer who does have probable cause." Id.
In Wegener, supra, an officer was dispatched to a one-car accident and suspected the driver had been drinking. The driver was transported to a hospital. The officer investigated the accident and radioed the dispatcher to request that a second officer go to the hospital to obtain a blood sample from the driver. The second officer caused a sample of the driver's blood to be drawn and then arrested him for driving under the influence. We held that "only an imprudent person could conclude other than that [the driver] probably had been driving while under the influence of alcohol," based on the information obtained by the two officers. Id. at 950, 479 N.W.2d at 786.
Other courts have also adopted the imputed or collective knowledge doctrine. Relying on United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the Idaho Court of Appeals stated, "An officer receiving a radio dispatch may be expected to take the message at face value and act upon it." Wilson v. Idaho Transp. Dept., 136 Idaho 270, 275, 32 P.3d 164, 169 (Idaho App.2001). "Whether the officer had the requisite reasonable suspicion to detain a citizen is determined on the basis of the totality of the circumstances, i.e., the collective knowledge of all those officers and dispatchers involved." Id. at 276, 32 P.3d at 170. See, also, State v. Carr, 123 Idaho 127, 844 P.2d 1377 *624 (Idaho App.1992) (collective knowledge of police officers involved in investigation, including dispatch personnel, may support finding of probable cause).
The North Dakota Supreme Court addressed whether a dispatcher's knowledge of the identity of an informant may be imputed to the investigating officer. State v. Miller, 510 N.W.2d 638 (N.D.1994). The court held, "Where one officer relays a directive or request for action to another officer without relaying the underlying facts and circumstances, the directing officer's knowledge is imputed to the acting officer." Id. at 643. "Thus, an officer, who is unaware of the factual basis for probable cause, may make an arrest upon a directive." Id.
"Under the `collective- or imputed-knowledge' doctrine, information known to all of the police officers acting in concert can be examined when determining whether the officer initiating the stop had reasonable suspicion to justify a Terry stop." People v. Ewing, 377 Ill.App.3d 585, 593, 316 Ill.Dec. 851, 859, 880 N.E.2d 587, 595 (2007). "[I]f the officer initiating the stop relies on a dispatch, the officer who directed the dispatch must have possessed sufficient facts to establish probable cause to make the arrest." Id. at 594, 316 Ill.Dec. at 859, 880 N.E.2d at 595.
In Ewing, supra, the dispatcher gave the officers the make, model, color, and license plate of the vehicle; told the officers that the vehicle contained two male occupants; and told the officers the direction the vehicle would be traveling. The court stated, "[C]alls made to a police emergency number are considered more reliable than other calls because the police have enough information to identify the caller even if the caller does not give his or her name." Id. at 595, 316 Ill.Dec. at 860, 880 N.E.2d at 596.
Where a nonanonymous caller reports a reckless, erratic, or drunk driver, the police must be permitted to stop the reported vehicle without having to question the caller about the specific details that led him or her to call so long as the nonanonymous tip has a sufficient indicia of reliability. Reckless and erratic drivers are likely impaired, and such drivers present an imminent danger to other motorists. A police officer should not have to wait to observe such driver commit a traffic violation or obtain specific details supporting the caller's conclusion before stopping the reported vehicle.
Id. at 597, 316 Ill.Dec. at 861-62, 880 N.E.2d at 597-98.
The investigatory stop in this case was based on a report from an emergency dispatch center to another law enforcement agency. The dispatcher conveyed that a woman had reported her husband was driving under the influence of alcohol. The husband was on his way to pick up their children. The woman was concerned for the children's safety. She provided the Lancaster County dispatch center with her name and telephone number, a detailed description of the truck, and the direction in which it was traveling.
The Lancaster County dispatch center relayed all the information to the Crete police officers, except that the caller and the driver were in the middle of a divorce. The Crete police officers had sufficient information and were within their authority to rely on it and take action. The officers were not required to personally observe erratic driving by Wollam. The information from the Lancaster County dispatch center could be imputed to the Crete Police Department, even though every detail was not conveyed.
The information had sufficient indicia of reliability. Although the Crete police officers *625 did not observe any traffic violation, such observation is not required when the totality of the circumstances is taken into consideration.
We find no error on the record of the county court. Its order overruling Wollam's motion to suppress was correct. The investigatory stop did not violate Wollam's constitutional rights. Our independent review confirms that the district court was correct in affirming the county court's judgment.

CONCLUSION
The judgment of the district court, which affirmed the judgment of the county court, is affirmed.
AFFIRMED.