IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL

STATE V. SLEDGE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
CLAUDE SLEDGE, APPELLANT.

Filed May 14, 2013.    No. A-12-494.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, and on brief, Sarah P. Newell, for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Claude Sledge appeals from an order of the district court for Lancaster County overruling his motion to suppress evidence and finding him guilty of driving during revocation, first offense, after a stipulated bench trial. On appeal, Sledge argues that the district court erred in overruling his motion to suppress, finding there was sufficient evidence to sustain his conviction, and imposing an excessive sentence. For the reasons set forth below, we affirm his conviction and sentence.

### BACKGROUND

The State filed an information charging Sledge with driving during revocation, first offense. Sledge filed a motion to suppress evidence obtained pursuant to the traffic stop that led to his arrest, alleging the officer lacked probable cause or reasonable suspicion to justify the stop.

The evidence adduced at the suppression hearing established that on July 14, 2011, at approximately 6 a.m., Lancaster County Deputy Sheriff Jeremy Schwarz was on duty in his marked patrol car and was parked in the median of a four-lane divided highway in Lincoln monitoring traffic. Schwarz saw a white Cadillac with tinted windows go past him traveling southbound. Schwarz pulled out of the median, caught up to the Cadillac, and then ran the Cadillac's license plate number using his in-car laptop computer.

Schwarz testified that through the use of the computer in his car, he can access local and statewide law enforcement databases. These databases can be used to search various information, including information on a particular vehicle and information on an individual, such as criminal history, driver's license status, and warrant history. When a search is performed, the search result contains information pertinent to the inquiry, as well as hyperlinks to related information.

Schwarz testified that when he ran the Cadillac's license plate number in this case, he discovered that it was registered to a white female named "Brooke Jarolimek." Schwarz noticed that the driver of the Cadillac, the only person in the vehicle, was a black male. He then looked up the citation history for the Cadillac and saw that three different people had been cited in the vehicle in the last year in Lancaster County. The most recent individual cited was a black male named "Kenith Colbert," who had been cited 3 months earlier. Schwarz then selected a hyperlink next to Colbert's name which took him to Colbert's "face page." The "face page" screen had a picture of Colbert and personal information, such as his date of birth, and a physical description. The description of Colbert said he has black hair and brown eyes, is 5 feet 7 inches tall, and weighs 144 pounds. Based on his date of birth, he was 21 years old at the time. In his photograph, he has short hair, a mustache, and a short beard.

Schwarz next selected the hyperlink for Colbert's driver's license information and learned that Colbert's license was suspended. This screen also had Colbert's driver's license picture, showing him with short hair, a mustache, and a short beard as in the other picture, but his driver's license lists him as weighing 157 pounds.

Schwarz then drove up next to the Cadillac and looked at the driver to see if the person driving the vehicle was Colbert based on the pictures and physical description he had of Colbert. Schwarz testified that he viewed the driver for a few seconds, but was able to see only the side of the driver's face, because the driver did not look at him. He testified that he focused on the facial features of the driver, including the facial hair, jaw structure, and the hair on the head. Schwarz also testified that the lighting conditions were low at that time of the morning and that there was a slight tint on the Cadillac's windows.

Schwarz testified that based on the information available to him at the time, the driver fit the description of Colbert, and that he initiated a traffic stop. Once the Cadillac stopped, Schwarz asked the driver for his driver's license and vehicle registration. The driver did not have identification with him but told Schwarz his name and that his driver's license was suspended. It was at this point that Schwarz learned that the driver of the Cadillac was Sledge, not Colbert. Schwarz went back to his patrol car to input Sledge's name into the computer and confirmed that Sledge's license was suspended. Sledge was arrested for driving under suspension.

Schwarz acknowledged that after he arrested Sledge, he learned that Colbert was in custody at the time of the traffic stop. Schwarz also acknowledged that he could have discovered that Colbert was in jail before initiating a stop of the Cadillac if he had checked the jail bookings.

He could have done this either by scrolling down on Colbert's "face page" to jail bookings or by clicking on the hyperlink for jail bookings. Schwarz testified that he did not check to see if Colbert was incarcerated before initiating the traffic stop, but testified that he never checks jail bookings before stopping a vehicle because he would have to check four different databases to check if the person was in state or federal custody.

Pictures of the different computer screens Schwarz viewed on his in-car computer and relied on before initiating the traffic stop were introduced and admitted into evidence.

Following the hearing on the motion to suppress, the trial court overruled the motion. It found that Schwarz had a reasonable and articulable suspicion based on articulable facts to stop the Cadillac and make contact with Sledge. The court recognized that although Schwarz was mistaken as to the identity of the driver of the Cadillac, it was a reasonable mistake based on all the surrounding facts and circumstances known to Schwarz at the time.

A stipulated bench trial was subsequently held, subject to Sledge's renewal of the objections raised in his motion to suppress. The parties' trial stipulation stated that Schwarz' trial testimony would be consistent with his testimony at the motion to suppress hearing; that at the time of the stop, arrest, and detention of Sledge, his driver's license was revoked for 15 years; and that at the time of the stop, arrest, and detention of Sledge, he was operating a motor vehicle on the highways or streets of the State of Nebraska and was not doing so pursuant to an ignition interlock permit. The other evidence admitted included copies of the police reports prepared in this case; a copy of Sledge's convictions in 2004 for driving under the influence, third offense, and refusing to submit to a chemical test, which led to a 15-year suspension of his license; a copy of Sledge's convictions in 2005 for driving under the influence, third offense, refusing to submit to a chemical test, and providing false information, which led to another 15-year suspension of his driver's license; a copy of Sledge's driver's license abstract from the Department of Motor Vehicles, showing that Sledge's license was revoked when the current offense occurred; and a copy of the bill of exceptions from the suppression hearing.

The trial court found Sledge guilty of driving during revocation and sentenced him to a period of 1 to 2 years' incarceration and revoked his driver's license for 15 years.

ASSIGNMENTS OF ERROR

Sledge assigns that the trial court erred in (1) overruling his motion to suppress evidence, (2) finding that there was sufficient evidence to find him guilty of driving during revocation, and (3) imposing an excessive sentence.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Garcia*, 281 Neb. 1, 792 N.W.2d 882 (2011).

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not

resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Kitt*, 284 Neb. 611, 823 N.W.2d 175 (2012). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Reyes*, 18 Neb. App. 897, 794 N.W.2d 886 (2011).

## ANALYSIS

*Motion to Suppress Evidence.*

Sledge first argues that the trial court erred in overruling his motion to suppress evidence. He contends that the evidence obtained from the stop which eventually led to his arrest for driving during revocation should have been suppressed because Schwarz did not have a reasonable, articulable suspicion that he was engaged in criminal activity, thereby violating his Fourth Amendment rights.

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Garcia, supra.* Regarding historical facts, we review the trial court's findings for clear error. Whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *Id.*

The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures. *State v. Wollam*, 280 Neb. 43, 783 N.W.2d 612 (2010). This guarantee requires that an arrest be based upon probable cause and limits investigatory stops to those made upon an articulable suspicion of criminal activity. *Id.*

An investigative stop is limited to brief, nonintrusive detention during a frisk for weapons or preliminary questioning. *State v. Wollam, supra*; *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993). While this type of encounter is considered a "seizure" and invokes Fourth Amendment safeguards, because of its less intrusive character, it requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime. *Id.* Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011).

Where the police have reasonable suspicion, they may pursue their investigation either to confirm their suspicion or to dispel the suspicion that crime is afoot. *State v. McGinnis*, 8 Neb. App. 1014, 608 N.W.2d 605 (2000).

An investigatory stop must be justified by objective manifestation that the person stopped is, has been, or is about to be engaged in criminal activity. In determining what cause is sufficient to authorize police to stop a person, the totality of the circumstances--the whole picture--must be taken into account. *State v. Wollam, supra*; *State v. Van Ackeren, supra.* The assessment of the totality of circumstances includes all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by

inference and deduction that the individual stopped is or has been or is about to be engaged in criminal behavior. *Id.*

Sledge first claims that the stop of the Cadillac was unlawful because it was unreasonable for Schwarz to mistake Sledge for Colbert as the driver of the vehicle given their differences in physical appearance. Sledge was 39 years old at the time of the stop, is 6 feet tall, and weighs 165 pounds. He has black hair and brown eyes, and at the time of his arrest, he had a mustache and goatee. Colbert was 21 years old at the time of the stop, is 5 feet 7 inches tall, and weighs 144 pounds according to his "face page," or 157 pounds according to his driver's license.

However, Schwarz testified that he was able to see only a side view of the driver's face and could also see only the driver from the middle of the chest up to the head. He further testified that the lighting conditions were low at that time of the morning and that there was a slight tint on the Cadillac's windows. Further, Schwarz did not have any information about Sledge before he stopped the Cadillac. Rather, he had Colbert's picture and physical description, and that is what he used in determining whether the driver of the Cadillac was Colbert. Schwarz testified that he focused on the facial features of the driver, including the facial hair, jaw structure, and hair on the head. From Schwarz' vantage point, driving in the lane next to the Cadillac at highway speed and having only a side view of the driver for a few seconds, the driver fit the description of Colbert. Schwarz' mistake in the identity of the driver was reasonable, given the information known to him at the time.

Sledge also claims that the stop of the Cadillac was unlawful, because it was unreasonable that Schwarz failed to discover that Colbert was in custody at the time of the stop and therefore was not the individual driving the Cadillac. Sledge contends that the information on Colbert's custody status was easily available and that Schwarz should have taken the steps to find this information.

Schwarz testified at the suppression hearing that he could have discovered that Colbert was in jail before initiating the stop of the Cadillac either by scrolling down on Colbert's "face page" to jail bookings or by clicking on the hyperlink for jail bookings. Schwarz testified that he did not check jail bookings before initiating the stop of the Cadillac, but further testified that he never checks jail bookings before stopping a vehicle because he would have to check four different databases while driving.

At the time Schwarz initiated the stop of the Cadillac, he knew that it was registered to Jarolimek and that three individuals other than Jarolimek had been cited in the Cadillac in the past year. The most recent citation, a few months earlier, was issued to Colbert. After seeing that Colbert, a black male, was most recently cited in the vehicle and that the driver of the vehicle was a black male, Schwarz ran a computer check on Colbert which brought up a picture of him and a physical description. Schwarz then viewed Colbert's driver's license information, which had a second picture of Colbert and revealed that Colbert's license was suspended at the time. Schwarz drove up next to the Cadillac and looked at the driver, trying to compare the pictures of Colbert to the driver. Based on the facial hair, jaw structure, and hair on the head of the driver, Schwarz determined that the driver looked like Colbert.

We conclude that based on the totality of the circumstances, Schwarz had reasonable suspicion that the driver of the Cadillac was Colbert and that he was driving on a suspended license and thus committing a crime. An investigatory stop was justified to allow Schwarz to

investigate his reasonable suspicion that Colbert was driving the Cadillac. Because the purpose of an investigative stop is to clarify ambiguous situations, even when it is equally probable that the vehicle or its occupants are innocent of any wrongdoing, police must be permitted to act before their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent. See *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996). Although Schwarz may not have been certain the driver was Colbert, he had the necessary reasonable suspicion and was entitled to pursue an investigation to confirm or dispel his suspicion that the driver was committing a crime. See *State v. McGinnis*, 8 Neb. App. 1014, 608 N.W.2d 605 (2000).

Because Schwarz had reasonable suspicion that the individual driving the Cadillac had a suspended license, the stop of the vehicle did not violate Sledge's Fourth Amendment right to be free of unreasonable search and seizure. The trial court did not err in overruling his motion to suppress evidence.

*Sufficiency of Evidence.*

Sledge next argues that if all the evidence obtained from the stop is suppressed, there is insufficient evidence to support a conviction for driving during revocation. Because we have determined that the investigatory stop of the Cadillac was lawful and that Sledge's motion to suppress evidence obtained from the stop was properly overruled, there is sufficient evidence to support Sledge's conviction, and Sledge's assignment of error is without merit.

*Excessive Sentence.*

Sledge also argues that the trial court abused its discretion by imposing an excessive sentence. Sledge was convicted of driving during revocation, a Class IV felony, with a possible penalty of up to 5 years' imprisonment, a $10,000 fine, or both, and which carries an automatic 15-year license revocation. See Neb. Rev. Stat. §§ 60-6,197.06 (Reissue 2010), 28-105 (Reissue 2008), and 29-2204(1)(a)(ii)(A) (Reissue 2008). The trial court sentenced Sledge to 1 to 2 years' imprisonment and revoked his driver's license for 15 years, a sentence within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Reyes*, 18 Neb. App. 897, 794 N.W.2d 886 (2011). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id.*

Sledge does not contest that his sentence is within the statutory limits. Rather, he claims that any incarceration time is excessive because he was on federal supervised release at the time of his arrest in this case and was doing well on that release. He was employed on the date of his arrest, a condition of his federal supervised release, and he contends that he drove on the morning of the incident only because his ride to work fell through and he had no other way to get there.

Sledge presented this information to the trial court during sentencing, and there is no indication that the court ignored or failed to consider the information presented. Further, Sledge has a consistent criminal history that dates back to 1990, and the trial court stated that it took into account Sledge's history and character, as well as the nature and circumstances of the crime. The court found that imprisonment was necessary for the protection of the public and because a lesser sentence would depreciate the seriousness of Sledge's crime and promote disrespect for the law.

Sledge has failed to show that the trial court abused its discretion in sentencing him. His final assignment of error is without merit.

## CONCLUSION

In conclusion, having found no merit to any of Sledge's assignments of error, we affirm his conviction and sentence.

AFFIRMED.