IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF KALE H.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF KALE H., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

KALE H., APPELLANT.


Filed January 19, 2021.    No. A-20-447.


Appeal from the County Court for Gage County: STEVEN B. TIMM, Judge. Affirmed.

Lyle Joseph Koenig, of Koenig Law Firm, for appellant.

Roger L. Harris, Gage County Attorney, and Michael W. Wehling for appellee.


PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## INTRODUCTION

Kale H. appeals from the order of the county court for Gage County, sitting as a juvenile court, adjudicating him as a juvenile for being a minor in possession of alcohol. On appeal, he contends that the juvenile court erred in denying his motion to suppress and that the evidence was insufficient to support the minor in possession charge. For the reasons stated below, we affirm.

## BACKGROUND

On August 14, 2019, the State filed a petition in the juvenile court, alleging that Kale was a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(b) (Reissue 2016) who, by reason of being wayward or habitually disobedient, was uncontrolled by his parents; and who deported himself so as to injure or endanger seriously the morals or health of himself or others. Specifically,

- 1 -

the State alleged that on or about July 28, Kale, being a minor under the age of 17, consumed or was in the possession of alcohol in violation of Neb. Rev. Stat. § 53-180.02 (Reissue 2010).

On November 18, 2019, Kale filed a motion to suppress all items of physical evidence seized by authorities on July 28, together with all statements allegedly made. Specifically, Kale alleged that (1) law enforcement entered the camper in which Kale was staying without a warrant or the owner's consent, (2) any consent given was not obtained from an individual privileged or authorized to give such consent, (3) any alleged statements made were the result of an illegal search and seizure, and (4) all evidence seized was the result of an unreasonable and illegal search.

A suppression hearing was held before the juvenile court on January 23, 2020. The State presented testimony from Sergeant Jason Sharp with the Gage County Sheriff's Office. Sharp was on duty on the evening of July 28, 2019, at the Gage County Fairgrounds. He was "working a special detail for the fair," with duties including providing "help at the closing of the beer garden," monitoring the fair campgrounds during the "quiet time" starting at 11 p.m., and in general providing surveillance against vandalism and other security. Sharp was aware that there had been problems with minors consuming alcohol earlier during the fair and "numerous complaints about people being loud down in the campground."

Because of those concerns, around 1:30 a.m., Sharp and another deputy walked through the campgrounds. They heard "some loud talking, some laughing, no yelling," and upon approaching, they found a group of young people, "under 21," outside of a camper. After asking the group to "keep it down," Sharp and the other deputy continued to walk around the campground. As they walked away, they were approached by two members of the Gage County Fair Board who stated that there were minors drinking at the camper from which they had just left.

Sharp and the other deputy then returned to the camper, and Sharp told the group they had just been given information that there were minors drinking. At that point, Sharp observed a young woman walk into the camper. Upon Sharp's inquiry, someone in the group told him the camper belonged to Bobby H. (Kale's father); the group also stated that Bobby was not inside the camper. Sharp then went up to the camper and knocked on the door and a young woman identified as Haley T. answered the door and said that she had been babysitting. Once the door was open, Sharp could also see another person, whom he knew was 21, sitting on a couch inside the camper.

At some point, the other deputy informed Sharp that he could see alcohol containers sitting out in the open. From Sharp's position, he was not initially able to see the alcohol containers, but once the other deputy pointed out their presence, Sharp was able to see them as well. Sharp then told the occupants of the camper that he had been given information that there were minors drinking in the camper, and he asked the young people inside (all under 21 except for the one individual identified by Sharp) to exit the camper. As this group exited the camper, Sharp asked each of them whether they had had anything to drink.

Sharp identified one of the underage individuals in the camper as Kale. When Sharp questioned Kale about whether he had been drinking, Kale responded, "not much," and he also indicated that he had been sleeping. Upon a search of the camper, several containers of alcohol were found, some of which were open and some closed.

On cross-examination, Sharp agreed that he did not know where or when Kale might have been drinking. He also confirmed that the camper was searched without a warrant.

Following the suppression hearing, the juvenile court entered an order denying Kale's motion to suppress. We discuss the court's ruling further as necessary in the analysis section below.

An adjudication hearing was held on May 21, 2020. The State presented testimony from Sharp, whose testimony was consistent with his testimony at the suppression hearing. During the course of Sharp's testimony, Kale renewed his motion to suppress. After the State rested, Kale's attorney made a motion to dismiss, which was taken under advisement by the juvenile court. Kale did not present any evidence.

The juvenile court entered an order adjudicating Kale as a juvenile within the meaning of § 43-247(3)(b), finding beyond a reasonable doubt that he was a minor (under the age of 19) in possession of alcohol in violation of § 53-180.02. The court ordered Kale to pay a fine of $250. Kale subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Kale asserts that the juvenile court erred in (1) failing to suppress the evidence of possession of alcoholic beverages for the reason that the evidence was obtained as a result of an illegal search and seizure and (2) finding him guilty of being a minor in possession of alcohol when there was not sufficient evidence to support the finding.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Seth C.*, 307 Neb. 862, 951 N.W.2d 135 (2020). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020).

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Andera*, 307 Neb. 686, 950 N.W.2d 102 (2020). Regarding historical facts, the appellate court reviews the trial court's findings for clear error. *Id.* But whether those facts trigger or violate Fourth Amendment protections is a question of law that the appellate court reviews independently of the trial court's determination. *State v. Andera, supra.*

## ANALYSIS

*Motion to Suppress.*

Kale asserts that the juvenile court erred in failing to suppress the evidence of possession of alcoholic beverages for the reason that the evidence was obtained as a result of an illegal search and seizure. Kale argues that his encounter with law enforcement was an investigative stop and that because Sharp lacked reasonable suspicion for the initial detention of Kale, all statements made by Kale and evidence from the search of the camper should have been suppressed. The State argues, however, that this was a tier-one police-citizen encounter and that the Fourth Amendment does not apply.

There are three tiers of police-citizen encounters under Nebraska law. *State v. Saitta*, 306 Neb. 499, 945 N.W.2d 888 (2020). The first tier of police-citizen encounters involves no restraint

of the liberty of the citizen involved, but, rather, the voluntary cooperation of the citizen is elicited through noncoercive questioning. *Id.* This type of contact does not rise to the level of a seizure and therefore is outside the realm of Fourth Amendment protection. *State v. Saitta, supra.* The second category, the investigatory stop, as defined by the U.S. Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), is limited to brief, nonintrusive detention during a frisk for weapons or preliminary questioning. *State v. Saitta, supra.* This type of encounter is considered a seizure sufficient to invoke Fourth Amendment safeguards, but because of its less intrusive character requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime. *State v. Saitta, supra.* The third type of police-citizen encounters, arrests, is characterized by highly intrusive or lengthy search or detention. *Id.* The Fourth Amendment requires that an arrest be justified by probable cause to believe that a person has committed or is committing a crime. *State v. Saitta, supra.* Only the second and third tiers of police-citizen encounters are seizures sufficient to invoke the protections of the Fourth Amendment to the U.S. Constitution.

A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. *State v. Saitta, supra.* In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled. *Id.*

An officer's merely questioning an individual in a public place, such as asking for identification, is not a seizure subject to Fourth Amendment protections, so long as the questioning is carried on without interrupting or restraining the person's movement. *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017). An officer's request that an individual step out of a parked vehicle does not automatically transform a tier-one police-citizen encounter into a tier-two encounter. *Id.* But, if the totality of the circumstances are such that a reasonable person would believe he or she was not free to ignore the request and stay in the vehicle, a seizure has occurred for Fourth Amendment purposes. *State v. Rogers, supra.*

Here, Sharp made contact with individuals in the camper (the young woman who opened the door and a 21-year-old), stated that he had been given information that minors were drinking in the camper, and asked if those two and anyone else in the camper could come out. One of the individuals who then exited the camper was Kale. There was no evidence presented at the suppression hearing to show that a reasonable person would have felt compelled to exit the camper or that they were not free to leave. Also, there is no evidence to show that Sharp or the other deputy displayed their weapons, touched Kale physically, or used language or tone of voice indicating the compliance with Sharp's request to exit the camper might be compelled. After the group exited the camper, Sharp proceeded to question them in a public place. While we are not convinced that a seizure occurred under the facts present here, even if a seizure did occur and the Fourth Amendment thus applies, any seizure of Kale's person was proper because law enforcement had reasonable suspicion to conduct an investigatory stop.

Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances and must be determined on a case-by-case basis. *State v. Saitta*, 306 Neb. 499, 945 N.W.2d 888 (2020). In determining whether a police officer acted reasonably, it is not the officer's inchoate or unparticularized suspicion or hunch that will be given due weight, but the specific reasonable inferences which the officer is entitled to draw from the facts in light of the officer's experience. *Id.*

Sharp and the other deputy were on duty at the county fairgrounds, providing security and surveillance during the fair, enforcing quiet hours, and preventing vandalism. Sharp was aware that there had been issues with noise and underage drinking earlier during the course of the fair. Sharp and the other deputy first approached individuals sitting outside of the camper, who were talking loudly, and asked them to comply with the quiet hours of the campground. As Sharp was walking away from the camper, he was then contacted by two fair board members who said that there were minors drinking inside the camper. When Sharp again contacted the group outside of the camper, telling them he had been given information that there were minors drinking inside the camper, he observed a young woman go into the camper.

In denying Kale's motion to suppress, the juvenile court treated the fair board members as citizen informants and relied on the collective knowledge of Sharp and the other deputy. The court did not err in doing so. The factual basis for an investigatory stop need not arise from the officer's personal observation, but may be supplied by information acquired from another person. *State v. Bol*, 288 Neb. 144, 846 N.W.2d 241 (2014). Under what is commonly called the collective knowledge doctrine, an officer who does not have personal knowledge of the facts establishing probable cause for the arrest or reasonable suspicion for the stop may nevertheless make an arrest or a stop if the officer is merely carrying out directions of another officer who does have probable cause or reasonable suspicion. *Id*. And, a citizen informant who has personally observed the commission of a crime is presumptively reliable. *State v. Wollam*, 280 Neb. 43, 783 N.W.2d 612 (2010). A citizen informant is a citizen who purports to have been the witness to a crime who is motivated by good citizenship and acts openly in aid of law enforcement. *Id.* Information from a reliable citizen informant may be accepted as true in order to justify a brief detention to determine whether or not a crime has been committed, is being committed, or is about to be committed. *Id.* Unlike the police tipster who acts for money, leniency, or some other selfish purpose, the citizen informant's only motive is to help law officers in the suppression of crime and is without motive to exaggerate, falsify, or distort the facts to serve his or her own ends. See *State v. Lammers*, 267 Neb. 679, 676 N.W.2d 716 (2004).

There is no evidence to show that the board members were motivated by a selfish purpose, as opposed for a desire to assist in the suppression of crime at the fairgrounds. And, although Sharp was not initially able to see the containers of alcohol due to where he was positioned, the other deputy did observe them when the door to the camper was opened and relayed this information to Sharp. Considering the totality of the circumstances, Sharp had a reasonable suspicion based on specific and articulable facts at the time that he knocked on the trailer door and asked the individuals inside to exit that a crime had been or was being committed inside the camper. The investigative stop of Kale to inquire as to whether he had been drinking was supported by

reasonable suspicion, and therefore, the court did not err when it denied the motion to suppress to the extent the motion relied on an allegedly illegal seizure of Kale's person.

Next, we turn to the warrantless search of the camper. Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to a few established and well-delineated exceptions. *State v. Saitta*, 306 Neb. 499, 945 N.W.2d 888 (2020). The warrantless search exceptions Nebraska has recognized include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest. *Id.* Nebraska has recognized that among the established exceptions to the warrant requirement is the automobile exception. *Id.* Probable cause, standing alone, is not an exception that justifies the search of a person without a warrant. *Id.*

The juvenile court relied upon both the plain view and the automobile exception, but we need only address the plain view exception as that resolves our analysis of this issue. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Connelly*, 307 Neb. 495, 949 N.W.2d 519 (2020).

A warrantless seizure is justified under the plain view doctrine if (1) a law enforcement officer has a legal right to be in the place from which an object subject to seizure could be plainly viewed, (2) the seized object's incriminating nature is immediately apparent, and (3) the officer has a lawful right of access to the seized object itself. *State v. Andera*, 307 Neb. 686, 950 N.W.2d 102 (2020). Here, Sharp and the other deputy were patrolling the fairgrounds to provide security and had a legal right to be in the public space of the fairgrounds, even when they were outside of the camper. The items seized from the camper included several bottles and/or cans of alcoholic beverages and with respect to the crime of being a minor in possession of alcohol, the incriminating nature of these items was immediately apparent. Sharp was not able to see the alcoholic beverage containers when the camper door was first opened due to his position relative to where Haley was standing and the angle of the door. The other deputy, however, was able to see the containers and relayed that information to Sharp, and Sharp was thereafter able to see the containers himself. The deputies had lawful right of access to the items that were eventually seized since the door was opened by the occupants, exposing the items to law enforcement.

The juvenile court did not err in denying Kale's motion to suppress.

*Minor in Possession.*

Kale asserts that the juvenile court erred in finding him guilty of being a minor in possession of alcohol when there was not sufficient evidence to support the finding.

At the adjudication stage, in order for a juvenile court to assume jurisdiction of a minor under § 43-247(3)(b), the State must prove the allegations of the petition beyond a reasonable doubt. *In re Interest of Cole J.*, 26 Neb. App. 951, 925 N.W.2d 365 (2019).

Section 53-180.02 provides:

> Except as provided in section 53-168.06, no minor may sell, dispense, consume, or have in his or her possession or physical control any alcoholic liquor in any tavern or in any other place, including public streets, alleys, roads, or highways, upon property owned by the State of Nebraska or any subdivision thereof, or inside any vehicle while in or on any other place, including, but not limited to, the public streets, alleys, roads, or highways,

or upon property owned by the State of Nebraska or any subdivision thereof, except that a minor may consume, possess, or have physical control of alcoholic liquor as a part of a bona fide religious rite, ritual, or ceremony or in his or her permanent place of residence.

Knowledge and consciousness of possession are essential elements of the crime of possession of alcoholic liquor by a minor. *State v. Masur*, 230 Neb. 620, 432 N.W.2d 815 (1988), *disapproved on other grounds, State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991). Circumstantial evidence can be sufficient to sustain a conviction of a minor in possession in violation of § 53-180.02. *State v. Laue*, 225 Neb. 57, 402 N.W.2d 313 (1987). One accused of a crime may be convicted on the basis of circumstantial evidence if, taken as a whole, the evidence establishes guilt beyond a reasonable doubt. See *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020).

In the present case, Sharp was contacted by fair board members who informed him that there were minors drinking in the camper. When Sharp made contact with the individuals in the camper, Kale, a minor, was present inside the camper where multiple containers of alcohol, some of which were open, were readily available. When asked if he had been drinking, he responded "not much." Under the circumstances, a reasonable person in Kale's position would understand that Sharp's question to him was in reference to consumption of alcohol. There was sufficient circumstantial evidence to sustain the conviction for minor in possession and thus, Kale's adjudication.

## CONCLUSION

We conclude that the juvenile court did not err in denying Kale's motion to suppress and that the evidence was sufficient to find him guilty of being a minor in possession of alcohol. Accordingly, the evidence was sufficient to adjudicate Kale under § 43-247(3)(b). The judgment of the juvenile court is affirmed.

AFFIRMED.