**STATE of Minnesota, Respondent,**

v.

**Clifford Joseph WARREN, Appellant.**

**No. C8–87–92.**

Court of Appeals of Minnesota.

May 5, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, John E. Pearson, Becker Co. Atty., Detroit Lakes, for respondent.

Peter W. Cannon, Mahnomen, for appellant.

Considered and decided by PARKER, P.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Clifford Joseph Warren appeals his conviction for driving while under the influence of alcohol and for driving with an alcohol concentration of .10 or more. We affirm.

## FACTS

During the early morning hours of June 29, 1986, Deputy Engum investigated a domestic situation involving Clifford and JoAnn Warren who are currently separated. Shortly after arriving at JoAnn's house located east of Detroit Lakes, Deputy Engum sent a radio dispatch that Clifford Warren had recently left the house in a Ford Mustang, possibly headed to White Earth where his mother lived. Engum also relayed JoAnn's report that Clifford was intoxicated and she was worried about the safety of their child who had been taken by Clifford.

Deputy Gordon received the dispatch while southbound on Becker Road #21 from Richwood. Near the intersection of Roads #21 and #32, Gordon spotted a Ford Mustang heading north. He turned around and followed the Mustang for about half a mile. No driving violations were observed. Gordon stopped the vehicle which had an Indiana plate. After stopping the vehicle, Gordon identified the driver as Clifford Warren, whom he had personally known for many years.

Deputy Gordon observed that Clifford was under the influence and arrested him. Following the Minnesota Implied Consent Advisory, Clifford agreed to a breath test which produced a reading of .12.

## ISSUE

Did the trial court err in finding the officer had an articulable suspicion for stopping the defendant's vehicle?

## ANALYSIS

In order that an investigatory stop comply with the Fourth Amendment, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). "[T]he totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). A trained officer may draw inferences and deductions that may elude an untrained person. *Id.; State v. Kvam*, 336 N.W.2d 525, 528 (Minn.1983); *Engwer v. Commissioner of Public Safety*, 383 N.W.2d 418, 419 (Minn.Ct.App.1986). "Also, the factual basis for stopping a vehicle need not arise from the officer's personal observation, but may be supplied by information acquired from another person." *Marben v. State, Department of Public Safety*, 294 N.W.2d 697, 699 (Minn.1980) (citations omitted). If the factual basis is supplied by another person, the information must be reliable and credible. *See State v. Davis*, 393 N.W.2d 179 (Minn.1986). The reliability of a private citizen may be presumed. *Frank v. Commissioner of Public Safety*, 384 N.W.2d 574, 576 (Minn.Ct.App.1986). Credibility refers to the officer's belief that "the informant had obtained her information in a reliable way." *Davis*, 393 N.W.2d at 181.

Applying these rules, the information provided by JoAnn Warren to Deputy Engum is reliable. Engum saw and spoke to JoAnn Warren and could judge the credibility and reliability of her statements. Deputy Engum then radioed the following information to Deputy Gordon:

1. Clifford and JoAnn Warren had been involved in a domestic dispute.

2. Clifford Warren had taken the couple's child and left the house in a Ford Mustang.

3. Clifford was possibly headed toward White Earth to his mother's house.

4. Clifford Warren was reported to be intoxicated.

Gordon observed a Mustang heading north in the direction of White Earth and stopped the vehicle on the basis of the radioed information.

Warren does not dispute the information received by Deputy Gordon. Warren disputes the reasonable inferences gleaned from that information. He argues it is not reasonable to suspect the occupants of the Mustang of criminal activity and it is not reasonable to assume that the Mustang which Gordon observed was the Mustang referred to in the radio dispatch.

■ In reviewing the validity of investigative stops, the courts have balanced several factors, including: the reliability of the informant, the description of the vehicle, the reported location of the vehicle, the officer's observation of traffic violations, and the time lag between the report of criminal activity and the stop. The reliability of the informant varies from an anonymous telephone tipster to a known citizen's face-to-face meeting with police officers. The vehicle description varies from minimal to very detailed. The reported location of the vehicle varies from pinpoint accuracy to a general direction of travel. The observation of traffic violations ranges from none to several. The shorter the time lag, the more likely the stop is valid.

In *State v. Teigen,* 381 N.W.2d 529 (Minn.Ct.App.1986), a stop, based on an anonymous telephone tip, of a possible drunken operator of a black Nissan pickup truck with a topper heading south on U.S. 75 was held invalid. However, a stop based on an anonymous telephone caller's report that a white convertible with license number MCS 255 had been tailgating her on Southview Boulevard and the officer's observation of that car in specified area was valid. *Frank,* 384 N.W.2d at 575–76.

The results in the two cases differed because specific facts were presented in *Frank,* where the caller reported tailgating and almost being forced into the curb, while in *Teigen,* only the caller's conclusion that the driver may be drunk was reported.

In *Marben,* a stop based on an anonymous trucker's report of a specific tailgating vehicle exiting a highway, in view of both the trucker and the officer, was upheld on the grounds that the proximity of the officer, trucker and exiting vehicle allowed the officer to verify the information's reliability. 294 N.W.2d at 698–99. In *Davis,* a stop based on a motorist's report that the car following her had just run a red light was upheld following the reasoning in *Marben.* 393 N.W.2d at 180–81. In the cited cases, the officer did not observe any traffic violations. They support the conclusion that a valid stop can be based on a reliable informant's description of the vehicle, its location, a report of specific facts concerning criminal activity, and the officer's confirmation of the description and location of the vehicle.

■ JoAnn Warren was a reliable informant. She had lived with Clifford. She recognized that he was drunk and was worried about the safety of their child. She reported a general description of the vehicle and its probable direction. The general direction indicated rural roads between Detroit Lakes and White Earth. Deputy Gordon spotted a Mustang at the intersection of two rural roads at around 2:30 a.m. A Becker County deputy sheriff for eight years, Gordon would be familiar with the roads between Detroit Lakes and White Earth and with the volume of traffic on rural roads at 2:30 a.m. The totality of the circumstances suggest that a Mustang appearing at this intersection, shortly after Deputy Gordon was alerted that such a vehicle could be in his vicinity, supports Gordon's suspicion that the Mustang carried Clifford Warren. Based on this reasonable inference, Gordon's stop of the Mustang was valid.

Warren argues that the totality of the circumstances including the rural setting

and traffic at that time of day is not found in the record and claims that the judge impermissibly inferred these facts. Although we believe the judge could have taken judicial notice of these facts, he was also entitled to infer these facts from the testimony of Deputy Gordon.

### DECISION

The police officer had specific and articulable facts to support the reasonable suspicion necessary for a valid stop.

Affirmed.