STATE OF NEBRASKA, APPELLEE, V. JOHN A. EGE, APPELLANT.
420 N.W.2d 305

Filed March 11, 1988.   No. 87-571.

J. Michael Coffey of Stave, Coffey, Swenson, Jansen & Schatz, P.C., for appellant.

Robert M. Spire, Attorney General, Gary P. Bucchino, Omaha City Prosecutor, and J. Michael Tesar, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

The defendant, John A. Ege, was convicted of second offense drunk driving. On appeal, he contends he was improperly stopped by a police officer who was informed by a citizen that the defendant was intoxicated. We affirm.

On the evening of October 26, 1986, Officer Hearn of the Omaha Police Department was in her cruiser, parked next to a Texaco station, attending to some paperwork. An employee of the station approached her and identified himself as Tim Blankenship. Blankenship called Hearn's attention to a green automobile in a parking lot across the street and told her that

the driver of the car had just driven up over the curb near the front door of the station. Blankenship further informed Officer Hearn that the driver came into the station to purchase some chewing gum and that he smelled strongly of alcohol. Hearn drove across the street to follow the vehicle. She observed the car start and stop three or four times in the parking lot, and then followed the car for a short distance without observing any moving violations. Officer Hearn stopped the vehicle. Hearn, like Blankenship, noted a strong odor of alcohol on the defendant's breath and also noticed slurred speech. The defendant failed a field sobriety test, and an Intoxilyzer test later showed his blood-alcohol content was 0.149 percent.

The defendant presents four assignments of error, all of which relate to the issue of whether the initial stop of the defendant was lawful.

The conduct of Officer Hearn in this case must be tested by the fourth amendment's proscription against unreasonable searches and seizures. In order for an investigatory stop to be lawful and justifiable, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). See, also, *State v. Ebberson*, 209 Neb. 41, 305 N.W.2d 904 (1981); Neb. Rev. Stat. § 29-829 (Reissue 1985). An investigatory stop must be justified by an objective manifestation, based upon the totality of the circumstances, that the person stopped has been, is, or is about to be engaged in criminal activity. *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987). The factual basis for the stop need not arise from the officer's personal observation, but may be supplied by information acquired from another person. *Adams v. Williams*, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). When the factual basis is supplied by another, the information must contain sufficient indicia of reliability. *Id*. An informant's detailed eyewitness report of a crime supplies its own indicia of reliability, and a citizen informant who has personally observed the commission of a crime is presumptively

reliable. *State v. Duff*, 226 Neb. 567, 412 N.W.2d 843 (1987); *State v. Butler*, 207 Neb. 760, 301 N.W.2d 332 (1981).

In this case the record clearly demonstrates that Officer Hearn had a reasonable basis, supported by specific and articulable information, upon which to stop the defendant's vehicle. In determining whether the facts known to an officer in this context provide a reasonable basis for an investigatory stop, the courts have balanced several factors, including the reliability and credibility of the informant, the description of the vehicle, the officer's observations of traffic violations, and the timelag between the report of criminal activity and the stop. See *State v. Warren*, 404 N.W.2d 895 (Minn. App. 1987). In *Warren*, the court defined the scope of such information as follows:

> The reliability of the informant varies from an anonymous telephone tipster to a known citizen's face-to-face meeting with police officers. The vehicle description varies from minimal to very detailed. The reported location of the vehicle varies from pinpoint accuracy to a general direction of travel. The observation of traffic violations ranges from none to several. The shorter the time lag, the more likely the stop is valid.

*Id.* at 897.

Here, there was a face-to-face confrontation between the informant and the officer. The informant identified himself by name and, in doing so, positioned himself to be held accountable for his intervention. By giving his name, the informant presumably knew that the police could arrest him for giving a false report. See Neb. Rev. Stat. § 28-907 (Reissue 1985). The informant's knowledge was based upon his observation of the defendant's driving his car over a curb, as well as on his face-to-face encounter with the defendant. Clearly, the informant in this case was of the most reliable type.

The description and reported location of the vehicle could not have been more accurate, since the informant was able to point directly to the car. Although Hearn did not observe any traffic violations, she did observe the defendant's vehicle move erratically in the parking lot. There was, apparently, little time between the informant's report and the subsequent stop of the

defendant's vehicle. We conclude on these facts that the stop was legal.

The defendant also contends that the informant should have been required to testify at trial to substantiate the officer's basis for stopping him. In his brief, the defendant submits that "there is no way of knowing whether there really was a Mr. Blankenship, and whether he ever relayed those statements to offer [sic] Hearn . . . ." Brief for Appellant at 12. The veracity of Officer Hearn, however, was subject to cross-examination. Furthermore, the informant's statements were not offered for the truth of the matter of the defendant's intoxication; they were offered to show that Officer Hearn formed a reasonable suspicion that the defendant was involved in criminal activity. As such, the statements were not hearsay. This is not a case where the State attempted to withhold the identity of the informant pursuant to Neb. Evid. R. 510, Neb. Rev. Stat. § 27-510 (Reissue 1985). The defense could have called the informant as a witness to discredit the testimony of Officer Hearn. We hold that where, as here, an officer testifies in open court, subject to cross-examination, as to what an informant related to her, such evidence may, standing alone, satisfy the State's burden to show that the officer formed a reasonable suspicion to stop, if the trial judge is convinced that the officer relied in good faith upon credible information supplied by a reliable informant. See *McCray v. Illinois*, 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967).

The decision of the district court is affirmed.

AFFIRMED.