IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. RODRIGUEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LUCIO A. RODRIGUEZ III, APPELLANT.

Filed December 3, 2013.    No. A-13-062.

Appeal from the District Court for Scotts Bluff County: LEO DOBROVOLNY, Judge. Affirmed.

Bell Island, of Island & Huff, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

Lucio A. Rodriguez III was charged with driving under the influence (DUI) with a blood alcohol level greater than .15, third offense; possession of cocaine; and possession of methamphetamine. After a jury trial, he was found guilty of DUI, but acquitted of the possession of cocaine charge. The court entered a directed verdict in Rodriguez' favor on the possession of methamphetamine charge.

On appeal, Rodriguez challenges the district court's analysis of the traffic stop and its order overruling his motion to suppress. He also argues the district court erred when it denied his motion for mistrial after the State conceded in opening argument that it could not prove one of the charges it was bringing to trial. Finding no merit to his assigned errors, we affirm.

FACTUAL BACKGROUND

On April 28, 2012, the Scotts Bluff County 911 emergency dispatch center received notification of a possible disturbance near a rental car business. When the dispatch center communicated this information to Officer Aaron Kleensang, the dispatcher noted that the caller

stated that he had been pushed out of a moving vehicle. The dispatcher also stated that the caller identified the vehicle as a green GMC Envoy and stated that this vehicle left the area heading westbound on Highway 26.

At the time Kleensang received the dispatch, he was near the vicinity of the reported activity. While en route to the area, Kleensang observed a vehicle matching the description he received from the dispatch center traveling westbound on Highway 26. Kleensang made two turns, followed the vehicle onto 17th Avenue and 20th Street, and observed it stop on its own. The vehicle moved to the side of the road and parked before Kleensang activated his patrol car's emergency lights. Kleensang testified that he activated the lights to signal the driver that Kleensang wanted to talk with him.

Kleensang approached the driver and began to question him about the reported disturbance. Rodriguez was identified as the driver. Kleensang had other officers in the area make contact with the caller, and the caller was eventually brought to a nearby location. No other evidence was adduced about the caller, and there was apparently no further action taken in regard to the disturbance. While discussing the reported disturbance with Rodriguez, Kleensang made several initial observations. He detected a strong odor of alcohol and noticed that Rodriguez had a flushed face, slurred speech, and bloodshot, watery eyes. After administering three field sobriety tests, Kleensang believed Rodriguez was heavily intoxicated. Kleensang arrested Rodriguez following a preliminary breath test and transported him to the detention center in Scotts Bluff, Nebraska. Rodriguez then submitted to a "DataMaster" test at the detention center, and his breath tested at .226 grams of alcohol per 210 liters of breath.

During the booking process, Rodriguez' wallet was taken from him and inventoried. Kleensang testified this is standard procedure whenever he takes someone to jail. When the wallet was opened, two clear plastic baggies containing apparent controlled substances were discovered at the bottom. Preliminary tests were conducted on these substances at the jail. Subsequent tests at the Nebraska State Patrol crime laboratory revealed that one substance was cocaine and that the other substance was not a controlled substance.

On May 10, 2012, the State filed an information charging Rodriguez with DUI with a blood alcohol level greater than .15, third offense; possession of methamphetamine; and possession of cocaine. Rodriguez moved to suppress any evidence gathered from the stop and subsequent search, contending that the stop was not based on reasonable and articulable suspicion that a crime had been committed or was about to be committed.

The district court overruled the motion to suppress. In its order, the court noted that the stop was justified under two separate analyses. First, the court concluded that the stop could be considered to be a "'first-tier' contact" for which no Fourth Amendment protections apply. The court found Kleensang had not used emergency lights or a siren to cause Rodriguez to stop. Thus, the court determined that a reasonable person would not have believed he was required to stop or that his movement was impeded in any way before Kleensang activated his patrol car's emergency lights. Second, analyzing the stop as a "'tier-two'" encounter, the court determined reasonable suspicion existed for the stop because Kleensang had corroborated the information from the dispatch center.

On December 18, 2012, the case proceeded to a jury trial. Despite having received laboratory reports demonstrating that Rodriguez did not possess methamphetamine on the night

he was arrested, the State did not dismiss the charge in advance of trial. Rodriguez' motions for mistrial based on this failure to dismiss were denied, but the court entered a directed verdict in his favor on the possession of methamphetamine charge at the close of the State's evidence. The jury convicted Rodriguez of DUI, but acquitted him of the possession of cocaine charge. The court sentenced Rodriguez to 60 days in jail and a term of probation, suspended his license for 5 years, and ordered him to pay court costs. He appeals his conviction and sentence.

## ASSIGNMENTS OF ERROR

Rodriguez claims, summarized and restated, that the district court erred when it (1) analyzed the traffic stop as a tier-one police contact; (2) overruled his motion to suppress the stop, despite the fact that the anonymous informant was not corroborated; and (3) denied his motion for mistrial.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. Regarding historical facts, we review the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013).

Whether to grant a mistrial is within the trial court's discretion, and we will not disturb its ruling unless the court abused its discretion. *State v. Watson*, 285 Neb. 497, 827 N.W.2d 507 (2013).

## ANALYSIS

*Classification of Traffic Stop.*

In his first assignment of error, Rodriguez argues that the district court erred when it analyzed the stop as a tier-one police-citizen contact. Citing a multitude of cases from a number of jurisdictions, Rodriguez claims that he was seized when Kleensang activated his patrol car's overhead emergency lights. He maintains that Kleensang needed to have reasonable suspicion, at a minimum, to conduct this stop.

The State does little to contradict Rodriguez' claim. While noting that there is an argument that Kleensang's stop of Rodriguez should not be classified as a seizure because Rodriguez voluntarily pulled over without police direction, the State does not pursue that argument. Rather, the State does not dispute that Rodriguez was seized and effectively concedes that the stop should be considered "a second tier contact between police and citizen." Brief for appellee at 5.

The district court evaluated the stop as both a tier-one and a tier-two police contact. See *State v. Burdette*, 259 Neb. 679, 611 N.W.2d 615 (2000) (explanation of three levels of police-citizen encounters). The court noted that either analysis would lead it to the same result: Kleensang's stop of Rodriguez was permissible. Because the State has conceded that this contact should be classified as a tier-two police contact, and Rodriguez does not challenge the district court's classification of the stop as a tier-two contact, our analysis of whether the court correctly analyzed the stop as a tier-one contact is unnecessary. Since an appellate court is not obligated to

engage in an analysis that is not necessary to adjudicate the case and controversy before it, we need not further address this issue. See *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013).

*Reasonable Suspicion for Stop.*

Rodriguez also argues that the district court should have sustained his motion to suppress because there was neither reasonable suspicion nor probable cause for Kleensang to make the stop. He claims that the stop was impermissible because the State failed to establish the reliability of the 911 caller who reported having been pushed out of Rodriguez' moving vehicle.

In this case, Kleensang stopped Rodriguez after receiving the 911 dispatch. He testified that he stopped Rodriguez based on the information he received from the dispatch. An investigative stop is limited to brief, nonintrusive detention during a frisk for weapons or preliminary questioning. *State v. Lamb*, 280 Neb. 738, 789 N.W.2d 918 (2010). The purpose of such a stop is to clarify ambiguous situations, and even if it is equally probable that the vehicle or its occupants are innocent of any wrongdoing, police must be permitted to act before their reasonable belief is verified by escape or fruition of the harm it is their duty to prevent. *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996); *State v. Morrissey*, 19 Neb. App. 590, 810 N.W.2d 195 (2012).

While this type of encounter is considered a "seizure" and invokes Fourth Amendment safeguards, because of its less intrusive character, this type of encounter requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime. *State v. Lamb, supra*. The test to determine if an investigative stop was justified is whether the police officer had a reasonable suspicion, based on articulable facts, which indicated that a crime occurred, was occurring, or was about to occur and that the suspect might be involved. *Id.* In determining what cause is sufficient to authorize police to stop a person, the totality of the circumstances must be taken into account. *State v. Wollam*, 280 Neb. 43, 783 N.W.2d 612 (2010). The assessment of the totality of the circumstances includes all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is or has been or is about to be engaged in criminal behavior. *Id.*

The factual basis for the stop need not arise from the officer's personal observation, but may be supplied by information acquired from another person. *Id.*; *State v. Bowley*, 232 Neb. 771, 442 N.W.2d 215 (1989). When the factual basis is supplied by another, the information must contain sufficient indicia of reliability. A citizen informant who has personally observed the commission of a crime is presumptively reliable. *Id.*

Rodriguez argues that without identification of the caller in this case, there is insufficient indicia of the caller's reliability. Although the record in the case before us does not identify the informant by name, such is not necessarily fatal to the reliance upon the information conveyed to law enforcement. The court in *State v. Bowley, supra*, found that the information relayed from the informants was presumptively reliable even though the informants were unidentified until after the driver was stopped. The court in *Bowley* balanced several factors in determining whether the investigatory stop was reasonable, which factors included the reliability and credibility of the informant, the description of the vehicle, the officer's observation of traffic

violations, and the timelag between the report of criminal activity and the stop. The court in *State v. Wollam, supra*, also recognized that the reliability of the informant is one of several factors in determining whether an investigatory stop is justified; other factors included the description of the vehicle involved, the reported location of the vehicle and direction of travel, and the timelag involved between the report and the officer's response. See *State v. Ege*, 227 Neb. 824, 420 N.W.2d 305 (1988).

In this case, the investigatory stop was based on a communication from an emergency dispatch center. An emergency dispatcher's knowledge may be properly considered as part of the analysis of reasonable suspicion. *State v. Bowley, supra*. The dispatcher reported that a caller reported having been pushed from a moving vehicle in front of a rental car business. Such a report leads to the conclusion that a crime has been committed. The caller also described the vehicle he was pushed from as a dark-colored GMC Envoy. According to the caller, the Envoy reportedly left the area headed west on Highway 26. This information was relayed to Kleensang, who was near the described area. When he reached the reported area shortly after receiving the dispatch, Kleensang personally observed a vehicle which matched the description in the dispatch and was heading in the direction indicated by the caller to dispatch. This dispatch gave Kleensang sufficient information to conduct the stop.

We do not find any error in the district court's analysis of this stop. The stop did not violate Rodriguez' constitutional rights. This assigned error is without merit.

*Motion for Mistrial.*

In his final assignment of error, Rodriguez argues that the district court erred when it overruled his motion for mistrial. His motion for mistrial related to the State's failure to dismiss the pending charge of possession of methamphetamine despite having received laboratory results months before trial which showed that Rodriguez did not possess methamphetamine. To attempt to establish prejudice, he points to the fact that a juror was dismissed because of his concerns about methamphetamine. These comments were heard by the entire jury.

Before trial, the potential jurors received a document styled as a "Trial Information Sheet," which listed, among other things, the three charged offenses, including possession of methamphetamine.

During voir dire, a potential juror expressed his concerns about his ability to remain impartial when methamphetamine was involved. The potential juror noted that his experiences with a family member who was using methamphetamine triggered reactions that would make it difficult for him to fairly evaluate the facts in this case. The potential juror was promptly excused. This sequence occurred in the presence of all prospective jurors in this case.

After the jury was impaneled, the court provided the jurors with instructions for the trial and outlined the charges against Rodriguez. During this sequence, the court twice mentioned that Rodriguez was charged with possession of methamphetamine.

The State then gave its opening statement, during which the county attorney admitted that he would not be able to prove the possession of methamphetamine charge. Rodriguez moved for a mistrial at the conclusion of the State's opening.

During the conference with the court outside of the jury's presence, the county attorney admitted that he received the laboratory results in July 2012 showing that neither substance was

methamphetamine and indicated that the results were provided to the defense. The county attorney stated that his failure to dismiss the methamphetamine charge was "an oversight" and that he "just didn't think about it." Rodriguez argued that it was not fair to be associated with this drug in front of the jury and highlighted the dismissal of a potential juror solely because of the juror's experiences with methamphetamine. He maintained that mistrial was the only remedy at that point.

The district court denied Rodriguez' motion. It noted that although the State did not follow the "best pre-trial practice," the error did not create a mistrial situation. At the conclusion of the State's case in chief, the court entered a directed verdict in favor of Rodriguez on the possession of methamphetamine charge. Thereafter, Rodriguez renewed his motion for mistrial. The district court again denied the motion for mistrial, noting its displeasure that the methamphetamine charge issue was not brought to its attention before trial, but finding that such failure was an oversight on the part of both parties.

Rodriguez directs us to the Nebraska Rules of Professional Conduct to support his contention that the district court should have granted a mistrial. Specifically, Neb. Ct. R. of Prof. Cond. § 3-503.8 relates to the responsibilities of a prosecutor before the courts. Section 3-503.8(a) states that a prosecutor in a criminal case shall "refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause." Rodriguez contends that the county attorney violated § 3-503.8(a) because he did not dismiss the charge despite having received laboratory test results that showed Rodriguez had not possessed methamphetamine. Rodriguez argues that such a violation is grounds for a mistrial.

A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011). Events that may require the granting of a mistrial include egregiously prejudicial statements of counsel, the improper admission of evidence, and the introduction to the jury of incompetent matters. *Id*. Before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice actually occurred. *Id*.

By his own admission, the county attorney became aware months ahead of trial that the State would not be able to prove the possession of methamphetamine charge, but did not dismiss the charge due to "an oversight." Whether or not the failure to dismiss this charge was intentional, we disapprove of the county attorney's conduct. Such conduct is improper in the course of conducting a fair trial because it may tend to expose a jury to irrelevant and prejudicial matters. See *State v. Barfield*, 272 Neb. 502, 723 N.W.2d 303 (2006) (prosecutor's duty is as much refraining from using improper methods to obtain wrongful conviction as it is using every legitimate means to bring about just conviction), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

Although we disapprove of the conduct by the prosecution in failing to dismiss the methamphetamine charge prior to trial, we do not believe such conduct reached a level necessitating a mistrial. Rodriguez has not demonstrated how the prosecutor's conduct prejudiced him. Specifically, Rodriguez has not shown how the jury was compromised by the improper conduct or that he was prevented from receiving a fair trial. The district court granted a

directed verdict in favor of Rodriguez on the methamphetamine charge. Rodriguez was acquitted of the cocaine possession charge. Finally, his conviction for DUI was supported by substantial evidence. Thus, Rodriguez' claim that the jury was improperly influenced by this conduct fails. We conclude that, on this record, a substantial miscarriage of justice did not occur and that the district court did not abuse its discretion when it determined that the circumstances did not require a mistrial.

## CONCLUSION

We determine there was reasonable suspicion to conduct the investigative stop based on the 911 dispatch and conclude that the district court did not abuse its discretion when it denied Rodriguez' motion for mistrial. We affirm the district court's judgment.

AFFIRMED.