Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/08/2025 08:11 AM CDT

State of Nebraska, appellee, v.
Todd Flodman, appellant.

___ N.W.3d ___

Filed April 1, 2025.    No. A-24-279.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.

2. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.

3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

4. **Appeal and Error.** An appellate court independently reviews questions of law in appeals from the county court.

5. **Criminal Law: Courts: Appeal and Error.** When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court.

6. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. And where the facts are largely undisputed, the ultimate question is an issue of law.

7. **Constitutional Law: Search and Seizure.** Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution

guarantee the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

8. **Constitutional Law: Search and Seizure: Investigative Stops: Motor Vehicles.** A traffic stop is a seizure for Fourth Amendment purposes, and therefore is accorded Fourth Amendment protections.

9. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle.

10. **Constitutional Law: Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** Probable cause is not the only standard applied by courts to determine whether a traffic stop is reasonable under the Fourth Amendment. The Fourth Amendment also permits brief investigative stops of vehicles based on reasonable suspicion when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity.

11. **Constitutional Law: Investigative Stops: Police Officers and Sheriffs: Probable Cause.** Police can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the Fourth Amendment.

12. **Police Officers and Sheriffs: Investigative Stops: Probable Cause: Words and Phrases.** Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. In determining whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account.

13. **Criminal Law: Eyewitnesses: Search and Seizure.** A citizen informant is a citizen who purports to have been the witness to a crime who is motivated by good citizenship and acts openly in aid of law enforcement.

14. **Criminal Law: Eyewitnesses.** Unlike the police tipster who acts for money, leniency, or some other selfish purpose, the citizen informant's only motive is to help law officers in the suppression of crime. Unlike the professional informant, the citizen informant is without motive to exaggerate, falsify, or distort the facts to serve his or her own ends.

15. **Criminal Law: Eyewitnesses: Presumptions.** A citizen informant who has personally observed the commission of a crime is presumptively reliable.

16. **Police Officers and Sheriffs: Investigative Stops: Eyewitnesses: Probable Cause.** In determining whether an investigatory stop is reasonable, the courts have balanced several factors, including the reliability and credibility of the informant, the description of the vehicle, the officer's observations of traffic violations, and the timelag between the report of criminal activity and the stop.

Appeal from the District Court for Otoe County, Julie D. Smith, Judge, on appeal thereto from the County Court for Otoe County, David J. Partsch, Judge. Judgment of District Court affirmed.

Gerald L. Soucie for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

Moore, Bishop, and Welch, Judges.

Moore, Judge.

## INTRODUCTION

Todd Flodman was convicted in the county court for Otoe County of driving under the influence (DUI), first offense. His conviction was affirmed on appeal to the district court. On appeal to this court, Flodman challenges the district court's affirmance of the county court's denial of his motion to suppress. For the following reasons, we affirm.

## STATEMENT OF FACTS

On September 22, 2022, the State filed a complaint in the county court, charging Flodman with DUI, first offense, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2021), a Class W misdemeanor. See Neb. Rev. Stat. § 60-6,197.03 (Reissue 2021).

Flodman filed a motion to suppress, seeking to exclude all evidence obtained by law enforcement resulting from a traffic stop of his vehicle and his subsequent arrest. Flodman's motion was heard by the county court on December 7, 2022. The State presented testimony from the deputy who conducted

the stop of Flodman's vehicle. The State also offered an exhibit containing the deputy's dashboard and body camera footage of his stop and subsequent arrest of Flodman, which exhibit was received by the court.

Dylan Lazure, a deputy with the Otoe County sheriff's office, was on duty on August 28, 2022. While on routine patrol that evening, he drove into the parking lot of a particular golf course. As Lazure was driving south along the street "outside of the parking lot," he noticed "a dark Ford F-150" pickup traveling past him in the opposite direction. Other than the pickup that passed Lazure, he did not see any other vehicles in the area as he continued into the parking lot. Once Lazure arrived in the parking lot, he was "waved down by a bystander" wearing a white shirt, who advised him that "the pickup that had just left the parking lot" had "backed into a white SUV and left and didn't leave any information." The bystander in the white shirt reported that he heard the accident; that individual had also been told about the accident by another bystander who saw the accident. Initially, Lazure spoke only with the individual wearing the white shirt. Rather than conducting a further investigation in the parking lot at that point, Lazure turned around and left on the same street by which he had entered, hoping to "catch that vehicle" so he could then investigate further.

After leaving the golf course parking lot, Lazure drove north until he reached a T-intersection, where he observed "the pickup" traveling west. Lazure turned to follow. Because there was another vehicle behind the pickup, Lazure got behind it and activated the overhead lights on his vehicle. Once that vehicle "moved over," Lazure pulled in behind the pickup. The video from Lazure's dashboard camera shows that the pickup is a dark color. While following the pickup, Lazure did not observe any "law infractions" or "issues with [the driver's] driving behavior." Lazure activated his vehicle's siren, and the pickup "came to a slow roll and stopped" on an adjoining street.

Once the pickup stopped, Lazure exited his vehicle and approached the pickup. As he approached, Lazure noticed damage on the pickup's rear bumper consistent with striking the white sport utility vehicle (SUV). Lazure made contact with the pickup's driver and identified him as Flodman. Lazure noticed that Flodman "had bloodshot, watery eyes," and Lazure could smell "the odor of alcohol" coming from the pickup. Flodman admitted that he had been drinking. Flodman, who lived near the location of the stop (and the golf course), called his wife and also agreed to return to the parking lot to "get this figured out." After Flodman's wife arrived, Lazure escorted Flodman to Lazure's vehicle, and they returned to the parking lot. Flodman's wife returned to the parking lot separately, where she exchanged information with the owner of the white SUV.

Back in the parking lot, Flodman declined to undergo field sobriety tests, but he did agree to undergo a preliminary breath test. Flodman failed the preliminary breath test, and Lazure then arrested him for DUI. Lazure subsequently transported Flodman to jail, where a formal breath test was administered. The bystander in the white shirt who heard the accident and the bystander who saw the accident were still in the parking lot, and before transporting Flodman to jail, Lazure spoke to the two bystanders and obtained their names and contact information. The second bystander confirmed that he did see the accident.

On January 27, 2023, the county court entered an order overruling Flodman's motion to suppress. The county court found, based on the facts and circumstances of the case, that when Lazure stopped Flodman's pickup, he "had reasonable cause to believe that Flodman had committed the misdemeanor of Leaving the Scene of Property Damage Accident." The county court found that Lazure "had [a] legitimate concern" that if there was a hit and run, the individual leaving the scene would not be apprehended unless Lazure was able to do so "immediately." The county court also found that Lazure

had reason to believe the individual leaving the scene "might cause further damage to property or injury to himself or others unless immediately stopped" and that if the individual left the scene because he was under the influence of drugs or alcohol, "evidence of that fact may be lost (dissipated) if the perpetrator was not immediately apprehended for investigation." Finally, the county court concluded that Lazure "had knowledge, based on information reasonably trustworthy under the circumstances, which justified a prudent belief that the suspect was committing or had committed a crime" and Lazure therefore "had probable cause to seize the suspect without a warrant so that further investigation could occur." The court concluded that Lazure did not violate Flodman's constitutional rights and overruled Flodman's motion to suppress.

Following the county court's denial of Flodman's motion to suppress, the parties proceeded to a bench trial on stipulated facts. The county court re-received the video footage from Lazure's dashboard and body cameras, and it also received into evidence copies of the bill of exceptions from the suppression hearing and the DataMaster checklist for the formal breath test. Flodman's attorney renewed his objections based on the motion to suppress, which were again overruled by the court. The formal breath test results showed that Flodman had ".146 of a gram of alcohol per 210 liters of breath." The court found Flodman guilty beyond a reasonable doubt of DUI, first offense, and it sentenced him to 9 months' probation and revoked his driver's license for 60 days.

Flodman appealed to the district court and filed a timely statement of errors, raising the issue of the county court's denial of his motion to suppress, as well as a claim of ineffective assistance of trial counsel not relevant here. On March 4, 2024, the district court heard arguments from the parties, and in a subsequent written order, the district court affirmed the judgment of the county court. We have set forth further details of the district court's analysis below.

## ASSIGNMENT OF ERROR

Flodman assigns that the district court erred in affirming the county court's determination that the stop of his vehicle was not in violation of the 4th and 14th Amendments to the U.S. Constitution and the decision in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and its progeny.

## STANDARD OF REVIEW

[1-5] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Kalita*, 317 Neb. 906, 12 N.W.3d 499 (2024). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *State v. Rieker*, 318 Neb. 238, 14 N.W.3d 855 (2025). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* An appellate court independently reviews questions of law in appeals from the county court. *State v. Temme*, 32 Neb. App. 397, 997 N.W.2d 814 (2023). When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court. *State v. Kalita, supra*.

[6] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Falcon, ante* p. 331, 16 N.W.3d 393 (2025). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Falcon, supra.* And where the facts are largely undisputed, the ultimate question is an issue of law. *State v. Langley, ante* p. 297, 15 N.W.3d 722 (2024).

ANALYSIS

Flodman assigns that the district court erred in affirming the county court's determination that the stop of his pickup was not in violation of the 4th and 14th Amendments to the U.S. Constitution and the decision in *Terry v. Ohio, supra*. Flodman only challenges Lazure's stop of his pickup as being in violation of the Fourth Amendment, and he argues that the report from the bystander who heard the accident to Lazure did not give rise to a reasonable suspicion that a crime had been committed.

[7,8] Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018). A traffic stop is a seizure for Fourth Amendment purposes, and therefore is accorded Fourth Amendment protections. *State v. Barbeau, supra*.

[9] As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Id.* A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *Id.* Here, the parties agree that Lazure did not observe any traffic violations before stopping Flodman.

[10] However, probable cause is not the only standard applied by courts to determine whether a traffic stop is reasonable under the Fourth Amendment. *State v. Barbeau, supra.* The Fourth Amendment also permits brief investigative stops of vehicles based on reasonable suspicion when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. *State v. Barbeau, supra.* Reasonable suspicion, like probable cause, depends upon both the content of information possessed by police and its degree of reliability. See *id.*

[11,12] Police can constitutionally stop and briefly detain a person for investigative purposes if the police have a

reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the Fourth Amendment. *State v. Barbeau, supra.* Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. *Id.* In determining whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019).

The question of reasonable suspicion here turns on whether, considering the totality of the circumstances, Lazure had reliable information that provided a particularized and objective basis for suspecting Flodman had unlawfully left the scene of a property damage accident. Both the county court and the district court found that when Lazure stopped the pickup, he had a reasonable suspicion that the driver of the pickup had violated Neb. Rev. Stat. § 60-696 (Reissue 2021) (leaving scene of property damage accident). Lazure does not dispute that he backed his pickup into the white SUV and left the golf course without leaving a note containing the statutorily required information. His arguments on appeal to this court focus on the reliability of the information that prompted Lazure to leave the parking lot and pursue the pickup pointed out to him by the bystander in the white shirt. Both the county court and the district court treated this bystander as a citizen informant, whose report to Lazure was presumptively reliable. Flodman argues that the bystander in the white shirt was not a citizen informant because the bystander heard, rather than saw, the accident and because another bystander told the bystander in the white shirt what had happened. Flodman also argues that the bystander in the white shirt should be considered an anonymous informant because Lazure did not collect the names and contact information of either bystander before leaving the parking lot in pursuit of the pickup.

[13-15] A citizen informant is a citizen who purports to have been the witness to a crime who is motivated by good citizenship and acts openly in aid of law enforcement. *State v. Wollam*, 280 Neb. 43, 783 N.W.2d 612 (2010). Unlike the police tipster who acts for money, leniency, or some other selfish purpose, the citizen informant's only motive is to help law officers in the suppression of crime. *State v. Lammers*, 267 Neb. 679, 676 N.W.2d 716 (2004). Unlike the professional informant, the citizen informant is without motive to exaggerate, falsify, or distort the facts to serve his or her own ends. *Id.* A citizen informant who has personally observed the commission of a crime is presumptively reliable. *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011); *State v. Bowley*, 232 Neb. 771, 442 N.W.2d 215 (1989).

[16] In determining whether an investigatory stop is reasonable, the courts have balanced several factors, including the reliability and credibility of the informant, the description of the vehicle, the officer's observations of traffic violations, and the timelag between the report of criminal activity and the stop. *State v. Bowley, supra.* The Nebraska Supreme Court stated:

> "The reliability of the informant varies from an anonymous telephone tipster to a known citizen's face-to-face meeting with police officers. The vehicle description varies from minimal to very detailed. The reported location of the vehicle varies from pinpoint accuracy to a general direction of travel. The observation of traffic violations ranges from none to several. The shorter the time lag, the more likely the stop is valid."

*State v. Ege*, 227 Neb. 824, 827, 420 N.W.2d 305, 308 (1988), quoting *State v. Warren*, 404 N.W.2d 895 (Minn. App. 1987).

In our consideration of whether Lazure's stop of Flodman was reasonable, we first set out the county court's and district court's analyses of Flodman's arguments and then make certain observations about the record before applying the factors of the above-referenced balancing test. The county court found that Lazure made a lawful stop of Flodman's pickup

and conducted a lawful investigation based upon a tip from a citizen. In reaching that conclusion, the county court observed, "The informant in our case witnessed a crime; openly reported it to a sheriff's deputy without seeking money, leniency, or advancing any other apparently selfish purpose; and had no apparent motive to exaggerate, falsify, or distort the facts." The county court also noted Lazure's observation of the pickup that was leaving the parking lot as he entered it, and it found that Lazure "acted immediately with haste and urgency to ensure that the suspect could be interviewed promptly."

In its review of the county court's decision, the district court rejected Flodman's assertion that the bystander in the white shirt was not a citizen informant because he only heard and did not see the pickup hit the SUV. The court reasoned that the bystander "had firsthand-knowledge of the fact that the collision had occurred by means of his senses—he heard it." In finding that the bystander was a citizen informant, the court stated:

> In the video, it is apparent that there were no other vehicles near the SUV. The collision had just happened. (The [pickup] was pulling out of the parking lot simultaneously with Lazure entering the parking lot, immediately prior to the man in the white shirt flagging him down). Surely, under those circumstances, the man in the white shirt would have turned his head toward the noise and concluded that the source of the noise was a collision between the [pickup] and the SUV.

The district court rejected Flodman's argument that "because the citizen informant was anonymous, his statements must be corroborated." The court again noted that the bystander in the white shirt had personally observed the collision "by means of his senses," that he had personally observed the pickup fail to stop at the scene, and that his statements to Lazure were corroborated by Lazure's observation of damage to Flodman's pickup at the time of the stop. The court concluded that the

bystander in the white shirt was a citizen informant whose statements were presumptively reliable.

The district court also rejected Flodman's arguments that Lazure should have conducted further investigation in the parking lot prior to attempting to stop the pickup and should have investigated the three pickups parked in driveways along the street outside of the parking lot. The court noted Lazure's testimony that the pickup he stopped was the same one he saw leaving the parking lot as he entered it. Under the circumstances in this case, the court found that taking a lengthy statement from the bystander or investigating each pickup parked along the street would have "significantly decreased or eliminated" Lazure's odds of catching up to the suspect's vehicle. The court observed that if there had been no damage to the SUV or if the suspect had left a note, there would not have been probable cause to believe the suspect had violated § 60-696. However, the court noted that a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possibly criminal behavior, even though there is no probable cause to make an arrest. See *State v. Cox*, 3 Neb. App. 80, 523 N.W.2d 52 (1994). The court concluded that even though Lazure may not have had enough information at the time he stopped Flodman to establish probable cause for a violation of § 60-696, he had "ample reasonable suspicion" to stop Flodman's pickup based on the bystander's report and Lazure's own observations upon entering and exiting the parking lot and upon stopping the pickup.

The district court's observations are consistent with our own review of the record. Lazure testified that he is "a truck guy" and "check[s] out trucks," which prompted him to notice "a dark Ford F-150" pass him as he was driving into the parking lot. He testified that upon entering the parking lot, he was stopped by a bystander wearing a white shirt who told him he had just heard a collision and the pickup that had just left had struck the white SUV. Lazure's dashboard camera video

does not show his encounter with the bystander in the white shirt, but the SUV is visible as Lazure turns around to leave. It is not possible, given the quality of the video, to see any damage on the SUV, but there are clearly no other vehicles parked next to it. There are various vehicles parked in driveways along the street before Lazure reaches the T-intersection. It is not possible to distinguish the color of the first parked pickup, but the second and third pickups are clearly light colored. And, the video clearly shows that Flodman's pickup is a dark color. Neither the dashboard nor the body camera video is of sufficient quality to distinguish the damage to Flodman's pickup testified to by Lazure.

We next turn our attention to the first factor of the balancing test. On appeal to this court, Flodman makes several arguments concerning the reliability and credibility of the bystander in the white shirt and argues that this bystander was not, in fact, a citizen informant. As noted above, a citizen informant is a citizen who purports to have witnessed a crime, is motivated by good citizenship, and openly aids law enforcement. See *State v. Wollam*, 280 Neb. 43, 783 N.W.2d 612 (2010). Flodman argues that the bystander in the white shirt was not a witness to a crime because he only heard and did not see the collision. We reject that argument.

A dictionary definition of "witness" includes "one who, being present, personally sees or perceives a thing." Webster's Encyclopedic Unabridged Dictionary of the English Language 1640 (1989). The definition of "perceive" includes "to become aware of, know, or identify by means of the senses." *Id.* at 1069. And, the definition of "observe" includes "to see, watch, perceive, or notice." *Id.* at 995. See, also, *State v. Scheffert*, 279 Neb. 479, 778 N.W.2d 733 (2010) (defining "observe," for purposes of rule regarding observation prior to giving preliminary breath test, as requiring officer to be in position to detect, through use of one or more senses, conduct or event that could contaminate breath sample); NJI2d Crim. 5.0 (defining "direct evidence" as either physical evidence of fact

or testimony by someone who has firsthand knowledge of fact by means of his or her senses).

Here, the bystander in the white shirt was present in the parking lot and perceived through his senses that an accident had occurred. He also saw the driver's failure to stop and leave information. The bystander in the white shirt had personal knowledge regarding the collision. See Neb. Rev. Stat. § 27-602 (Reissue 2016) (witness may testify to factual matters based upon their personal knowledge). The bystander in the white shirt reported to Lazure that the accident had just occurred, and this bystander pointed to the pickup that had just left the parking lot as the vehicle involved in the collision, which pickup Lazure had observed leaving the parking lot just seconds before. Lazure immediately left the parking lot to locate the pickup for further investigation. Under these circumstances, it was reasonable for Lazure to attempt to stop the pickup before investigating further in the parking lot. As noted by the district court, Lazure did not need probable cause to make an investigatory stop of the pickup.

In our consideration of the first factor of the balancing test, we also reject Flodman's argument that the report of the bystander in the white shirt was unreliable because Lazure did not establish the bystander's identity or the identity of the other bystander who saw the accident until after stopping Flodman and returning to the parking lot. The Nebraska Supreme Court rejected a similar argument in *State v. Bowley*, 232 Neb. 771, 442 N.W.2d 215 (1989). In that case, a police officer was flagged down by two individuals on a motorcycle who observed the defendant's erratic driving. While speaking with the officer, the individuals identified the suspect vehicle as it passed by. The officer then followed the vehicle and observed it weaving in and out of traffic without signaling. Based upon the report from the bystanders on the motorcycle and the officer's own observations, he stopped the vehicle to determine the driver's condition. A relatively short time passed between the officer's contact with the bystanders and

his stop of the suspect vehicle. The bystanders remained and identified themselves to police after the stop. The Nebraska Supreme Court concluded that the bystanders were citizen informants and that their report, together with the officer's own observations, provided reasonable suspicion for an investigatory stop.

Similarly, in the present case, the bystander in the white shirt flagged Lazure down in person, making a face-to-face report based on his having heard the accident and having seen the pickup leave without stopping. Although the bystander did not identify himself by name in this initial encounter, we do not think this is a significant bar to finding him reliable given the Nebraska Supreme Court's analysis in *State v. Bowley, supra*. Both that bystander and the bystander who saw the accident remained in the parking lot until the conclusion of Lazure's DUI investigation, at which time they both provided their names and contact information to Lazure. We conclude that the first factor strongly supports a finding that Lazure's stop of Flodman was reasonable. The county court did not err in treating the bystander in the white shirt as a citizen informant whose report to Lazure was presumptively reliable and the district court did not err in affirming that determination.

The second factor of the balancing test concerns the description of the vehicle, which can vary from minimal to very detailed. Here, the "description" consists of Lazure's own observations, combined with information provided directly by the bystander in the white shirt. The record shows that Lazure took notice of the make, model, and dark color of the pickup that passed him when he entered the parking lot. He was informed by the bystander in the white shirt that he had just heard a collision, that another bystander had seen the collision, and that the driver of the pickup that just left had not stopped and left his information. Lazure left the parking lot, and shortly thereafter, he located and stopped a pickup, which he observed was the same one he saw leaving the parking lot as he entered it.

Lazure's dashboard camera video shows that after leaving the parking lot and prior to reaching the T-intersection, he passed by three pickups parked in driveways along the street outside of the parking lot. It also shows that Flodman's pickup was a dark color. On appeal to this court, as he did on appeal to the district court, Flodman argues that Lazure should have investigated the parked pickups he passed prior to reaching the T-intersection. However, two of those parked pickups did not match Lazure's own observations of the pickup that passed him as he entered the parking lot. And, we agree with the district court that investigation of the third pickup, any of the other parked vehicles, or any vehicles parked in the various garages along the way, would have precluded the possibility of catching up to the suspect's pickup if it had continued beyond the T-intersection. Finally, the report of the bystander in the white shirt was corroborated when Lazure stopped Flodman and observed damage on his pickup consistent with having struck the SUV. Based on the bystander's in-person report and Lazure's own observations, we conclude the second factor strongly supports a finding that Lazure's stop of Flodman was reasonable.

The third factor of the balancing test is the observation of traffic violations, which can range from none to several. Here, Lazure observed no traffic violations prior to stopping Flodman. As he did on appeal to the district court, Flodman relies on cases where no traffic violations were observed. Specifically, he relies on *State v. Colgrove*, 198 Neb. 319, 253 N.W.2d 20 (1977), and *State v. Ryland*, 241 Neb. 74, 486 N.W.2d 210 (1992), *disapproved, State v. Woldt*, 293 Neb. 265, 876 N.W.2d 891 (2016). The district court found those cases distinguishable from the present case, and it also noted the Nebraska Supreme Court's disapproval of *Ryland* "[t]o the extent that [it] holds that an information gathering stop requires reasonable suspicion or probable cause." See *State v. Woldt, supra*, 293 Neb. at 276, 876 N.W.2d at 899.

In *State v. Colgrove, supra*, police stopped a car to serve warrants, but upon stopping the car, they realized that the individuals they were seeking were not in it. The officers did not observe any traffic violations prior to stopping the car, and the occupants had not done anything to arouse the officers' suspicions. One of the officers proceeded to check the occupants' identities and detected the odor of marijuana. Subsequent searches of the car and its occupants revealed a gun, a small amount of marijuana, and some other paraphernalia. The Nebraska Supreme Court concluded that the investigatory stop was unreasonable where the undisputed facts showed that the officers did not have any basis to conclude that the occupants of the car were committing, were about to commit, or had committed any crime, and it found that the defendant's motion to suppress should have been granted.

In *State v. Ryland, supra*, a deputy wanted to obtain a statement from the defendant about an accident the defendant had witnessed the week before. The deputy had been unsuccessful in contacting the defendant by phone. The deputy observed someone resembling the defendant get into a car, verified the car was registered to the defendant, and proceeded to follow it. The deputy did not observe any traffic violations before stopping the car. The stop led to the defendant's arrest for DUI. On appeal, the Nebraska Supreme Court found that because the deputy had no probable cause to stop the defendant and no reasonable suspicion of the existence of criminal activity, the trial court should have sustained the defendant's motion to suppress.

We agree that the present case is distinguishable from *Colgrove* and *Ryland*. Here, Lazure was advised by a citizen informant that the driver of the pickup Lazure had just observed leaving the parking lot had backed into the white SUV shortly prior to Lazure's arrival and had departed without leaving a note. Although Lazure did not observe any traffic violations before stopping Flodman, he believed that the pickup was the same one that had passed him on his way into

the parking lot, and upon approaching the stopped pickup, he observed damage on its bumper consistent with it having struck the SUV. Given the strength of the evidence in support of the first two factors and of the fourth factor, discussed below, we do not find the lack of evidence in support of the third factor of the balancing test to be dispositive.

The fourth and final factor of the balancing test is the timelag between the report of the criminal activity and the stop; a shorter timelag increases the likelihood that the stop is valid. See *State v. Ege*, 227 Neb. 824, 420 N.W.2d 305 (1988). Here, Lazure observed a pickup leaving the parking lot as he entered it. The bystander informed Lazure that the pickup that had just left was the one that had backed into the white SUV. Lazure turned his vehicle around, left the parking lot, and located and stopped a pickup that he identified as being the one he had observed leaving the parking lot as he entered it. A review of Lazure's dashboard camera video shows that less than 1 minute 20 seconds elapsed between when he turned his vehicle around, located and pulled in behind the pickup he had observed, and both vehicles came to a stop on an adjoining street. The evidence in support of the fourth factor is strong.

Balancing the four factors set forth in *State v. Bowley*, 232 Neb. 771, 442 N.W.2d 215 (1989) (reliability and credibility of informant, description of vehicle, officer's observations of traffic violations, and timelag between report of criminal activity and stop), we conclude that Lazure's investigatory stop of Flodman was reasonable. Considering the totality of the circumstances, we determine Lazure had reliable information that provided a particularized and objective basis for suspecting Flodman had unlawfully left the scene of a property damage accident. Because the investigatory stop of Flodman's pickup was supported by reasonable suspicion, the county court did not err in denying Flodman's motion to suppress, and the district court did not err in affirming the county court's decision.

## CONCLUSION

Upon our review, we affirm the district court's decision that affirmed the county court's decision to deny Flodman's motion to suppress and to find Flodman guilty of driving under the influence, first offense.

Affirmed.